WESLEY LEIPHART v. NORTH CAROLINA SCHOOL OF THE ARTS

No. 8510SC691

(Filed 6 May 1986)

**1. Public Officers § 12— dismissal of School of Arts employee—leadership role in meeting about superior**

There was substantial evidence to support the dismissal of petitioner as Director of Student Activities at the N. C. School of the Arts on the ground that petitioner's leadership role in assembling a meeting of division directors to discuss complaints about their superior, the Dean of Student Services, in the absence of the Dean constituted personal misconduct resulting in a serious disturbance of the normal operation of the Department of Student Services. N.C.G.S. § 126-35.

**2. Public Officers § 12— discharge of State employee—opportunity to respond to charges—meeting with superior**

A meeting between petitioner and his immediate superior prior to his dismissal as Director of Student Activities at the N. C. School of the Arts satisfied due process requirements of a pretermination opportunity to respond to the charges against him.

**3. Public Officers § 12— dismissal of State employee—statement of reasons given simultaneously with dismissal**

When a State employee is being dismissed for personal misconduct, the N.C.G.S. § 126-35 requirement of timely written notice is met where the written statement of the reasons for dismissal is given to the employee simultaneously with his dismissal.

**4. Public Officers § 12— dismissal of State employee—notice of specific acts**

A notice of dismissal sufficiently identified the specific acts resulting in petitioner's discharge in compliance with N.C.G.S. § 126-35 where it stated that "[t]he specific basis for this decision is your leadership role in assembling the meeting of October [21], 1983, in my office . . . ."

**5. Public Officers § 12— dismissal of State employee—notice of appeal rights**

A letter dismissing petitioner as Director of Student Activities of the N. C. School of the Arts met the requirement of N.C.G.S. § 126-35 that the employee be furnished with a written statement of his appeal rights where it stated, "You may choose to appeal this decision within 30 days in writing to the State Personnel Office, Employee Relations Division," and the letter was accompanied by a copy of the School's Grievance Procedure.

**6. Public Officers § 12— dismissal of State employee—failure to follow internal appeal procedure**

Failure of the N. C. School of the Arts to follow its normal internal administrative appeal procedure in the dismissal of petitioner as Director of Student Activities by failing to provide reviews by the Grievance and Appeal Committee and then by the Chancellor did not violate petitioner's rights

where the Chancellor had approved the discharge of petitioner and the internal review procedure would only have served to provide the Chancellor an opportunity to review a decision he had already made.

7. **Public Officers § 12— dismissal of State employee—consultation with members of State Personnel Commission—representation by daughter of State Personnel Director—fair hearing**

Petitioner was not deprived of a fair administrative hearing of his dismissal as Director of Student Affairs of the N. C. School of the Arts because the Dean of Student Services had consulted with members of the State Personnel Commission before dismissing petitioner or because the daughter of the Director of State Personnel represented the School before the hearing officer, where petitioner failed to show any disqualifying personal bias on the part of the decision makers from familiarity with the facts of the case, and where there was nothing in the record to indicate that the Director of State Personnel had any role in the decision-making process.

8. **Constitutional Law § 18; Public Officers § 12— dismissal of State employee—no violation of free speech right**

Petitioner's First Amendment right of free speech was not violated by his dismissal as Director of Student Activities at the N. C. School of the Arts because of his role in assembling a meeting of division directors to discuss complaints about their superior, the Dean of Student Services, since petitioner's complaints about the Dean were not directed to matters of public concern but focused on petitioner's own personal displeasure with the Dean's internal policies.

Judge BECTON concurring in the result.

APPEAL by petitioner from *Hobgood (Robert), Judge.* Order entered 15 April 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 3 December 1985.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Thomas J. Ziko for respondent appellee.*

*David B. Hough for petitioner appellant.*

COZORT, Judge.

Petitioner was fired from his position as Director of Student Activities in the Student Services Department at the North Carolina School of the Arts. The reason given for his dismissal was personal misconduct, specifically, his role in assembling a meeting of other division directors to discuss complaints about their superior, the Dean of Student Services, in the absence of the Dean. On appeal, petitioner raises several procedural and substan-

tive issues, including whether his dismissal comported with the due process requirements of the United States Constitution, and whether his dismissal violated his right to free speech under the First Amendment to the Constitution. We affirm. The pertinent facts follow:

Petitioner Wesley Leiphart was employed as Director of Student Activities in the Student Services Department at the North Carolina School of the Arts (hereinafter School). At the time of his dismissal, petitioner had been continuously employed by the State for approximately six (6) years. The petitioner reported directly to Patricia Harwood, Dean of Student Services. In addition to Student Activities the Student Services Department consisted of four other divisions headed by four directors. All the directors worked closely together with each other and Dean Harwood. Dean Harwood held bi-weekly meetings with the directors in order to discuss and respond to problems, concerns or issues relating to the department.

On 19 October 1983 petitioner and Dean Harwood met to discuss an upcoming job classification study. After the meeting Dean Harwood left campus to attend a workshop at East Carolina University. Dean Harwood had informed her staff that she would be attending this workshop for two days.

On 21 October 1983 petitioner called a meeting to discuss complaints about the Department of Student Services. Prior to the meeting the petitioner compiled a list of complaints he had received about the Department of Student Services and Dean Harwood. Present at the meeting were three directors and Bec Christian, who was filling in for one of the directors while he was away on business. One of the directors objected to having such a meeting because some of the complaints were against persons who were not present at the meeting. As a result, no discussion took place concerning any of the complaints on the petitioner's list and the meeting ended. Dean Harwood was not present at the meeting because she was attending the workshop at East Carolina.

On 24 October 1983 the Dean met with the petitioner in her office. The Dean informed him that she had learned about the meeting that was called in her absence. The Dean questioned petitioner about his involvement in the meeting.

On 18 November 1983, Dean Harwood notified petitioner in writing that he was being dismissed. The dismissal letter stated:

Dear Mr. Leiphart:

I regret to inform you that I have reached a decision that your services are no longer required, and you are hereby being dismissed immediately for reasons of personal conduct.

The specific basis for this decision is your leadership role in assembling the meeting of October [21], 1983, in my office, the purpose of which was, in my opinion, to totally sabotage my authority as Dean of Student Services and to undermine any authority or leadership I might have with my immediate staff. It has never been my posture to refuse to consider differing viewpoints on the administration of this Division. However, there is a responsible and professional way to bring up these concerns in a productive manner, and there is an irresponsible and unprofessional way to do this. You have chosen the latter route. Your actions in calling this meeting, setting the agenda, and leading the discussion in my absence and without my knowledge was totally disruptive to the normal functioning of this Division and professionally irresponsible. No organization, academic or otherwise, should be expected to tolerate such mutinous behavior. This deliberate act on your part to sabotage my authority and disrupt productive working relationships between me and my staff forces me to the conclusion that you are no longer able to discharge your responsibilities in a professional and productive manner. Because of your actions, I no longer have trust in your integrity, your professionalism, or your ability to perform your duties as Director of Student activities.

Therefore, after a complete discussion of this situation with the Chancellor and with his approval, you are hereby dismissed as Director of Student Activities.

*    *    *    *

You may choose to appeal this decision within 30 days in writing to the State Personnel Office, Employee Relations Division.

On 28 November 1983, petitioner wrote the Personnel Director of the School requesting a hearing before the School Griev-

ance and Appeal Committee. On 30 November 1983, the Personnel Director informed petitioner that he should appeal directly to the State Personnel Commission because the Chancellor had approved his dismissal and the requirements of an internal hearing had been satisfied. Petitioner then timely appealed to the State Personnel Commission.

On 26 January 1984 a hearing was held before a Hearing Officer of the State Personnel Commission. The Opinion of the Hearing Officer was issued on 26 March 1984. The Opinion set forth "Findings of Fact and Conclusions" recommending that the State Personnel Commission affirm the School's decision to dismiss Petitioner for just cause. The full State Personnel Commission, after considering the Hearing Officer's Opinion and Recommendation, ordered that the decision to dismiss petitioner be left undisturbed.

Pursuant to G.S. 150A-43 (recodified 1986) petitioner filed a Petition for Judicial Review on 14 May 1984. The case was heard on 25 March 1984 by Superior Court Judge Robert H. Hobgood. On 15 April 1985 Judgment was entered upholding the School's dismissal of petitioner.

Petitioner's appeal raises three major issues: (1) whether the dismissal of petitioner for personal misconduct is supported by substantial evidence in view of the entire record, G.S. 150A-51(5) (recodified 1986); (2) whether procedural irregularities deprived petitioner of due process; and (3) whether petitioner's First Amendment rights to free speech were violated by his dismissal.

[1] First we consider whether the superior court correctly decided that the School's decision to dismiss petitioner on the grounds of personal misconduct was supported by substantial evidence in light of the whole record. A permanent State employee may be dismissed for (1) inadequate performance of duties or, (2) personal conduct detrimental to State service. *Jones v. Dept. of Human Resources*, 300 N.C. 687, 268 S.E. 2d 500 (1980). Petitioner was dismissed for misconduct. According to State Personnel Commission regulations promulgated pursuant to G.S. 126-4(7a), "participation in any action that would in any way seriously disrupt or disturb the normal operation of . . . [a] department . . ." is one of several activities representative of personal misconduct which constitutes just cause for dismissal under G.S. 126-35. 1 N.C.A.C. 8J .0609(b)

(repealed 1984). The School contends that petitioner's role in assembling the 21 October 1983 meeting constituted an action which seriously disturbed the normal operation of the Department of Student Services. Thus, the question presented for our review is whether there is substantial evidence in the record which would support the Commission's finding that petitioner's action in assembling a meeting to discuss complaints about the Department and the Dean disturbed the normal operation of the Department such that it constituted personal misconduct.

In reviewing an administrative decision to determine whether the decision is supported by substantial evidence, this court, pursuant to G.S. 150A-51(5), must apply the "whole record" test. The "whole record" test requires the court to take into account all the evidence, both that which supports the decision of the Commission and that which in fairness detracts from it. *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E. 2d 538, 541 (1977); *see also Faulkner v. New Bern-Craven County Bd. of Educ.*, 311 N.C. 42, 316 S.E. 2d 281 (1984). In essence, the reviewing court determines whether an administrative decision has a rational basis in the evidence. *In re Rogers*, 297 N.C. 48, 65, 253 S.E. 2d 912, 922 (1979).

With respect to the personal misconduct charge, the Commission, by adopting the Hearing Officer's Order, made the following findings and conclusions:

Findings of Fact

        *    *    *    *

2. . . . All of the . . . directors reported directly to Ms. Patricia Harwood, Dean of Student Services. In administering their respective division, [*sic*] all the directors are required to work closely with each other and Ms. Harwood. To this end, Ms. Harwood held bi-weekly mandatory staff meetings with the directors in order for them to discuss and respond to problems, concerns or issues relating to the department. In addition, Ms. Harwood held monthly staff meetings with all of the departments [*sic*] staff members, which consisted of 25 employees.

        *    *    *    *

6. Petitioner and Ms. Harwood met on the morning of October 19, 1983 to discuss an upcoming job classification study. The above meeting lasted for about 90 minutes; afterward Ms. Harwood left to attend a workshop at East Carolina University. Ms. Harwood had informed her staff that she would be attending the workshop for two days.

7. On October 20, 1983, Petitioner showed Mr. Johnson, Director of Counseling Services, a list of concerns/complaints about the department which he had compiled. Petitioner indicated that he had heard or received the complaints from other staff members. Petitioner's list of concerns was primarily about Ms. Harwood and Mr. Hackney . . . .

   \*    \*    \*    \*

9. On October 21, 1983, Mr. Johnson and Petitioner called Ms. Braxton and Ms. Porter, respectively, to inform them of the meeting which had been scheduled for 10:00 a.m. Ms. Harwood and Mr. Hackney were not asked to attend the call [sic] meeting because they were out of town attending some workshops. Because Mr. Hackney was unavailable to attend the call [sic] meeting, Petitioner asked Ms. Bec Christian of Mr. Hackney's staff to attend the call [sic] meeting as Mr. Hackney's representative. Mr. Hackney had asked Ms. Christian to take care of the Residence Life section while he was away. However, according to Mr. Hackney, Ms. Christian was not left in charge to handle his administrative duties, e.g., attend a director [sic] meeting.

10. When the call [sic] meeting commenced, Ms. Braxton, Ms. Porter, and Mr. Johnson were surprised to see Ms. Christian at the meeting because it was unusual for someone other than the directors to attend a director's [sic] meeting. With nonverbal communication, Mr. Johnson indicated to Petitioner that he open the meeting. Petitioner opened the meeting by stating that he had heard and received a lot of complaints, statements, and misconceptions about the department. At that time Ms. Braxton asked Petitioner if any of the complaints were against her. Petitioner said, "No." Ms. Braxton asked Petitioner

if the complaints were against anybody who was not pres-
ent at the meeting. Petitioner said, "Yes." Ms. Braxton
said, "If that's the case then [such] a meeting was inap-
propriate." The other participants at the meeting, in-
cluding Petitioner, agreed with Ms. Braxton's latter
statement. Although Petitioner agreed with Ms.
Braxton's statement, based on his expression while clos-
ing his folder, he was not too pleased with it. As a result
of Ms. Braxton's statement, no discussion took place on
any of the complaints on the Petitioner's list. The call
[sic] meeting ended with the participants agreeing that
Mr. Johnson and Petitioner would meet with Ms. Har-
wood on October 24th to discuss the complaints with her.

\*    \*    \*    \*

14. From October 25, 1983 to Petitioner's dismissal of No-
vember 18, 1983, all of the directors, except Mr. Johnson,
expressed to Ms. Harwood that they could not trust Peti-
tioner and that their working relationship with him had
been strained. They felt like Petitioner's involvement in
compiling and presenting the list of complaints was un-
professional and an act of backstabbing.

\*    \*    \*    \*

Conclusions

\*    \*    \*    \*

3. Next the question on substantive just cause must be ad-
dressed. The evidence presented by Respondent at the
hearing more than meets the sufficiency standards for
just cause to dismiss an employee. The Respondent has
shown that Petitioner was dismissed for his leadership
role in assembling a call [sic] meeting at a time when he
knew that his supervisor, Ms. Harwood, would be absent.
The purpose of the call [sic] meeting was to discuss some
complaints that Petitioner had received from other em-
ployees about/against Ms. Harwood. Petitioner contends
that it was not his idea to assemble the meeting; instead
he asserts that he agreed with Mr. Johnson who suggest-
ed the meeting on October 20, 1983. . . .

Petitioner had been hearing and receiving complaints about Ms. Harwood for at least six weeks prior to the October 21 call [sic] meeting. During that time, Petitioner never informed Ms. Harwood about the complaints against her; instead Petitioner compiled a list of the complaints as he received them. Petitioner's action in not informing Ms. Harwood of the complaints denied her, as well as her staff, an opportunity to address the problems. Petitioner contends that he did not confront Ms. Harwood with these complaints because she was unapproachable. But Ms. Harwood provided regular staff meetings, directors' meetings, and maintained an open door policy for staff members to discuss problems that affected the department. In addition, Ms. Harwood's willingness to try to resolve problems that affected the staff morale was demonstrated during the summer of 1983 when she had a consultant to conduct a conflict management workshop.

Further, Petitioner contends that although the call [sic] meeting was held on October 21, 1983 during Ms. Harwood's absence, he did not reveal the content of the list of complaints. Even so, it was Petitioner's intention to discuss the serious accusations about Ms. Harwood, who was not there to defend herself. Petitioner was stopped from carrying out his intentions by the participants at the meeting, who agreed that such a forum was an improper way to discuss Ms. Harwood's administration. Although Petitioner verbally agreed with the group's decision, he was not pleased with it, which he showed by his expressions. Petitioner's action to try to discuss the serious accusations at this meeting in Ms. Harwood's absence was, at the least, unprofessional.

After the other directors, excluding Mr. Johnson, learned of the nature of the Petitioner's list of complaints, they felt and indicated to Ms. Harwood that they could not trust him. The directors felt like Petitioner's involvement in compiling the list of complaints had and would strain their working relationship with him. It is essential that the directors in Student Services work together in order to carry out the functions of the department. Petitioner's

action in this matter have [*sic*] damaged his credibility and effectiveness with his peers and supervisor.

These findings and conclusions are amply supported by substantial evidence in the record. It is uncontested that a meeting was held on 21 October 1983 to discuss complaints about the Department of Student Services and Dean Harwood, in the absence of Dean Harwood. There is substantial evidence in the record that petitioner played an instrumental role in assembling the meeting. Substantial evidence exists to support the conclusion that the purpose of the meeting was to discuss complaints received from other employees about the Dean. Dean Harwood testified that she lost all trust and confidence in petitioner's ability to fulfill his role in the department after she learned of the meeting held in her absence. Two directors also testified that they could no longer trust the petitioner. There is substantial evidence in the record which indicates that the petitioner had been collecting complaints about the Dean which he compiled in a list prior to the 21 October meeting and that petitioner intended to discuss these complaints at the 21 October meeting.

Based on an examination of the whole record, we conclude that there is substantial evidence to support the Commission's decision to uphold the School's dismissal of petitioner on the ground of personal misconduct resulting in a serious disturbance of the normal operation of the Department of Student Services.

[2] We next consider petitioner's allegations that his dismissal violated his rights to due process of law. We will consider: (1) what pretermination procedures were due petitioner; (2) what notice of termination is due petitioner pursuant to G.S. 126-35; and (3) what post-termination procedures are due the petitioner.

Initially, we note it is uncontested that petitioner had a property interest of continued employment created by state law and protected by the Due Process Clause of the United States Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 33 L.Ed. 2d 548, 92 S.Ct. 2701 (1972); *Faulkner v. North Carolina Dept. of Corrections,* 428 F. Supp. 100 (W.D.N.C. 1977). "The right to due process 'is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred,

without appropriate procedural safeguards.' " *Cleveland Bd. of Educ. v. Loudermill,* --- U.S. ---, 84 L.Ed. 2d 494, 503, 105 S.Ct. 1487, 1493 (1985), *quoting* from Justice Powell's separate concurring opinion in *Arnett v. Kennedy,* 416 U.S. 134, 167, 40 L.Ed. 2d 15, 94 S.Ct. 1633 (1974). See Comment, *Discharge of Employees Within the State Personnel System: The Due Process Requirements for the Deprivation of Property and Liberty,* 20 Wake Forest L. Rev. 413 (1984) for an excellent discussion of the due process rights afforded state employees.

In *Cleveland Bd. of Educ. v. Loudermill, supra,* the Supreme Court of the United States determined what pretermination procedures must be accorded a public employee who can be discharged only for cause. The Court stated that the Due Process Clause requires " 'an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' (Citation omitted.)" *Loudermill,* at 503-04, 105 S.Ct. at 1493-94. The court went on to hold that a State employee who has a right to continued employment subject to dismissal for just cause is entitled to a pretermination opportunity to respond. *Id.* The pretermination opportunity to respond is "an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 506, 105 S.Ct. at 1495.

In this case, petitioner was given a pretermination opportunity to respond to the charges against him. Petitioner was discharged for his leadership role in assembling a meeting on 21 October 1983 in Dean Harwood's office, the purpose of which Dean Harwood perceived was to sabotage her authority as Dean and to undermine her authority or leadership. On 24 October 1983, the Dean met with petitioner in her office to inform him that she knew about the meeting that petitioner and another staff member had called in her absence. At that time the Dean informed the petitioner that calling such a meeting in her absence was inappropriate. Petitioner had the opportunity to respond to the charges against him and deny his involvement in the meeting. Petitioner did not deny his involvement in the 21 October meeting but informed the Dean that the meeting was adjourned because there were objections to discussing complaints regarding the Dean in her absence. At the pretermination stage, due proc-

ess requires the employee be given an opportunity to respond to the charges against him prior to termination. The 24 October meeting between petitioner and Dean Harwood met the pretermination due process requirements.

**[3]** Petitioner next argues that he was given inadequate notice of his dismissal as required by law. G.S. 126-35 provides:

> No permanent employee subject to the State Personnel Act shall be discharged, suspended, or reduced in pay or position, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights. The employee shall be permitted 15 days from the date the statement is delivered to appeal to the head of the department. . . . However, an employee may be suspended without warning for causes relating to personal conduct detrimental to State service, pending the giving of written reasons, in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons.

G.S. 126-35 establishes a condition precedent that must be fulfilled by the employer before disciplinary actions are taken. *Employment Security Commission v. Wells*, 50 N.C. App. 389, 274 S.E. 2d 256 (1981). The employer must provide the employee with a written statement enumerating specific acts or reasons for the disciplinary action and containing a statement of the employee's appeal rights. *Id.*

Petitioner contends specifically that his notice was inadequate for these reasons: (1) notice under G.S. 126-35 must be given *prior to* the disciplinary action, and his notice was given *simultaneously with* his discharge; (2) the notice of dismissal failed to identify the specific acts committed, thus depriving petitioner of notice of the conduct for which he was dismissed; (3) the notice of dismissal failed to properly advise the petitioner of his right to appeal.

We do not read G.S. 126-35 to *prevent* notice from being given simultaneously with the disciplinary action in this case. The purpose of G.S. 126-35 is to provide the employee with a written

statement of the reasons for his discharge so that the employee may effectively appeal his discharge. *Employment Security Commission v. Wells, supra*, at 393, 274 S.E. 2d at 259. The statute was designed to prevent the employer from summarily discharging an employee and then searching for justifiable reasons for the dismissal. In this case, the petitioner was given a written statement specifying the reasons for his dismissal at the time he was dismissed. This method of providing the employee with the written notice simultaneously with the dismissal prevented the employer from subsequently searching for reasons to justify the discharge. Furthermore, G.S. 126-35 provides for the suspension of an employee "without warning for causes relating to personal conduct detrimental to State service, pending the giving of written reasons, in order to avoid undue disruption of work or to protect the safety of persons or property or for other serious reasons." Petitioner was dismissed for actions disturbing the normal operation of his Department such as to constitute personal misconduct. Under the provisions of G.S. 126-35 quoted above, he could have been suspended without warning on 18 November 1983, later given written reasons, and then dismissed. However, Dean Harwood had the written reasons prepared on 18 November. It is senseless to require that an employee be suspended, the giving of written reasons postponed, and the petitioner's dismissal postponed when the decision to terminate for personal misconduct has been reached and the written basis for the decision is available to be given to the employee. Thus, we hold that when an employee is being dismissed for personal misconduct, the requirement of timely written notice has been met where the written statement of the reasons for dismissal is given to the employee simultaneously with his dismissal.

[4] We further find that the notice of dismissal clearly identified the specific act that resulted in petitioner's discharge. The 18 November 1983 letter of dismissal stated: "The specific basis for this decision is your leadership role in assembling the meeting of October [21], 1983, in my office . . . ." G.S. 126-35 requires that the acts or omissions be described "with sufficient particularity so that the discharged employee will know precisely what acts or omissions were the basis of his discharge. . . . An employee wishing to appeal his dismissal must be able to respond to agency charges and be able to prepare an effective representation." *Em-*

*ployment Security Commission v. Wells, supra.* There is nothing ambiguous in the notice of dismissal concerning the specific act committed by petitioner which led to his discharge. Petitioner was clearly notified of the specific act which led to his dismissal. He is entitled to no relief on this basis.

[5] We next consider whether the letter given petitioner met the requirement of G.S. 126-35 that the employee be furnished with a written statement setting forth his appeal rights. *See Luck v. Employment Security Commission,* 50 N.C. App. 192, 272 S.E. 2d 607 (1980). The notice of dismissal stated: "You may choose to appeal this decision within 30 days in writing to the State Personnel Office, Employee Relations Division." In addition, the notice was accompanied by a copy of the School's Grievance Procedure. The notice of dismissal need not explain every step in the appeal process. It must inform the employee of his *right to appeal. Id.* The notice of dismissal in this case adequately informed petitioner of his right to appeal. We hold the 18 November 1983 letter of dismissal complied with all the requirements of G.S. 126-35.

[6] Petitioner next argues that he was deprived of due process during the post-termination stage of appeal. He first contends the appropriate internal appellate procedures were not followed. While G.S. 126-35 requires only that the employee be allowed to appeal to the Head of the Department (which, under Chapter 126 means the Chancellor of the School) and then to the State Personnel Commission, the internal review procedures for the School of the Arts provided for much more. Under the appeal procedures established in the School's Grievance Procedure Manual, a four-step process is contemplated. Step one is discussion at the employee's departmental level (in this case, the Student Services Department) with the employee's immediate supervisor or the department head (Dean Harwood), or both. Step two is an appeal from the department level to the Director of Personnel for the School. Step three is an appeal to the Grievance and Appeal Committee, which is to make a recommendation to the Chancellor. The Chancellor is not bound by the recommendation of the Grievance and Appeal Committee in making his decision on the employee's appeal. Step four is an appeal to the State Personnel Commission.

The normal internal administrative appeals process was not followed in this case. When petitioner wrote to the Personnel Di-

rector on 28 November 1983, he requested a hearing before the Grievance and Appeal Committee, which is the first part of step three in the internal process. The Director of Personnel responded to petitioner in writing on 30 November 1983:

> The ultimate authority in the . . . Grievance Process [here] is the Chancellor. Dean Harwood, "after a complete discussion of the situation with the Chancellor and with his approval," dismissed you from your position. As the Chancellor stated to the campus community last week, "I endorsed a discharge process that could lead, at Mr. Leiphart's request, to a formal hearing before the State Personnel Commission." State Personnel Officials indicate that this satisfies the requirements of an internal hearing.
>
> \*    \*    \*    \*
>
> You may appeal directly to the State Personnel Commission within 30 days of November 18, 1983.

The School's failure to follow its internal review process does not automatically entitle petitioner to a reversal of the dismissal determination. In order to claim any relief based on a violation of the internal appeal procedures, petitioner must show that there was a substantial chance there would have been a different result in his case if the established internal procedures had been followed. *Farlow v. North Carolina State Board of Chiropractic Examiners*, 76 N.C. App. 202, 208, 332 S.E. 2d 696, 700, *disc. rev. denied*, 314 N.C. 664, 336 S.E. 2d 621 (1985). The School points out that the Chancellor had been consulted by Dean Harwood and had approved the discharge of petitioner. It argues that the internal appeal procedure would only have served to provide the Chancellor with an opportunity to review a decision he had already made. We agree with the position advanced by the School. Although it would have been better practice to allow petitioner to present his case before the Grievance Committee, he has failed to show that the results would have been different had the procedures been followed. Thus, we hold that the failure of the School to follow its internal grievance procedures did not violate petitioner's rights.

[7] Petitioner contends he was deprived of a fair and impartial administrative hearing during the post-termination stage of appeal because Dean Harwood consulted with members of the State

Personnel Commission before dismissing petitioner and because the daughter of the Director of the State Personnel Commission represented the School before the Hearing Officer. A public employee facing an administrative hearing is entitled to an impartial decision maker. *Hortonville Joint School Dist. v. Hortonville Education Assn.*, 426 U.S. 482, 49 L.Ed. 2d 1, 96 S.Ct. 2308 (1976). To make out a due process claim based on this theory, an employee must show that the decision-making board or individual possesses a disqualifying personal bias. *Salisbury v. Housing Authority*, 615 F. Supp. 1433, 1439-41 (E.D. Ky. 1985). There is nothing in the record to indicate that the Director of State Personnel, Harold Webb, had any role in the decision-making process. And while it is true that the North Carolina State Bar has ruled that Ms. Webb's participation in cases which were ultimately reviewed by the State Personnel Commission during the term of her father's appointment "presents an unacceptable appearance of impropriety," that mere appearance of impropriety, standing alone, is not sufficient grounds for disturbing the Commission's decision. The petitioner has failed to show that because of Ms. Webb's participation in the hearing either the hearing officer or members of the Full Commission had the kind of personal stake in the decision which resulted in a disqualifying personal bias.

The petitioner has also failed to show that the Dean's consultation with members of the State Personnel Commission prior to dismissing the petitioner deprived him of an impartial hearing. "Mere familiarity with the facts of a case gained by an agency in performance of its statutory role does not, however, disqualify a decisionmaker [sic]." *Hortonville, supra*, 426 U.S. at 493, 49 L.Ed. 2d at 9, 96 S.Ct. at 2314. The petitioner has failed to show any disqualifying personal bias on the part of the decision makers because of familiarity with the facts of his case.

[8] Lastly, the petitioner contends that his First Amendment rights of freedom of speech and assembly were violated by his dismissal. We disagree. To make out a claim under the First Amendment, the employee must show that his speech was concerning a matter of public concern. *Pressman v. University of North Carolina*, 78 N.C. App. 296, 337 S.E. 2d 644 (1985), *disc. rev. allowed*, 315 N.C. 589, 341 S.E. 2d 28 (1986). Speech is of public concern if when fairly considered it relates " 'to any matter of political, social, or other concern to the community.' " *Pressman,*

*supra, quoting Connick v. Myers,* 461 U.S. 138, 146, 75 L.Ed. 2d 708, 719, 103 S.Ct. 1684, 1690 (1983). Petitioner's speech, his criticism of Dean Harwood, was not based on public-spirited concern. Instead, it focused on his own personal displeasure with the Dean's internal policies. We hold that the decision to discharge petitioner did not violate his First Amendment rights of free speech.

Affirmed.

Judge WEBB concurs.

Judge BECTON concurs in the result.

Judge BECTON concurring in the result.

Wesley Leiphart's arguments are not insubstantial. Especially appealing are his arguments (a) that Dean Harwood improperly talked to people in the "Hearing Chain" established by the School of the Arts' internal appellate procedures and obtained their approval of her proposed action to dismiss him before she did so; and (b) that the notice of his dismissal under G.S. Sec. 126-35 was inadequate since it was given simultaneously with his discharge. I find the error committed, if any, to be harmless, however. None of the people Dean Harwood talked to ruled on Leiphart's case, and G.S. Sec. 126-35 would have allowed Harwood to suspend Leiphart "without warning for causes relating to personal conduct detrimental to State service . . . ."