KYLE R. PASCHAL, Plaintiff v. JERRY D. MYERS, Personally and in his Official Capacity as County Manager of Rockingham County, North Carolina; W. Wayne Garrison, Personally and in his Official Capacity as Director of Rockingham County Emergency Medical Services; and ROCKINGHAM COUNTY, a Political Subdivision of the State of North Carolina, Defendants

No. COA97-193

(Filed 17 March 1998)

1. **Labor and Employment § 54 (NCI4th)— employee handbook—personnel policies—adoption as ordinance—not part of employment contract**

A county's personnel policies set forth in its employee handbook did not become a part of a former EMS employee's contract of employment because the county commissioners had adopted the personnel policies as an ordinance. Therefore, plaintiff EMS employee remained an employee at will, and summary judgment was properly entered against plaintiff on his breach of contract claim based on the county's alleged failure to follow its personnel policies in terminating his employment.

**2. Constitutional Law § 105 (NCI4th); Labor and Employment § 63 (NCI4th)— county EMS employee—property interest in employment—creation by ordinance**

A former county EMS employee showed an enforceable property interest in continued employment created by ordinance in that the county's employee handbook, which had been adopted as an ordinance, created the reasonable expectation of continued employment within the meaning of the Due Process Clause.

**3. Public Officers and Employees § 35 (NCI4th)— county officials—sued in official capacities**

A county manager and a county EMS director were sued only in their official capacities where the complaint failed to assert any allegations to show that these defendants were acting in any manner other than in their official capacities, and there were no allegations that defendant's actions were corrupt or malicious or that defendants acted outside the scope of their duties.

**4. Labor and Employment § 69 (NCI4th)— pre-termination due process—meetings sufficient**

Two meetings between plaintiff and county EMS officials prior to the termination of plaintiff's employment with the county EMS met due process requirements where, at the first meeting, the EMS training officer gave plaintiff a copy of a letter from plaintiff's supervisor alleging that plaintiff had filed a workers' compensation claim falsely stating that an injury to his finger was work-related, informed plaintiff that he could make a written statement explaining his side of the story, and gave plaintiff a memorandum suspending him for three days pending an investigation of the allegations in the letter; and at the second meeting, the training officer, supervisor and plaintiff listened to a tape recording of plaintiff's telephone calls on the night plaintiff hurt his finger, plaintiff presented a written incident report, and the training officer gave plaintiff a memorandum which summarized her investigation of the allegations against him and her reasons for his dismissal.

**5. Labor and Employment § 69 (NCI4th)— post-termination due process—hearings sufficient**

Plaintiff former county EMS employee was accorded post-termination due process where plaintiff was provided all of the evidence upon which an EMS training officer relied in deciding to dismiss him; the director of EMS reviewed plaintiff's dismissal at

PASCHAL v. MYERS

[129 N.C. App. 23 (1998)]

a hearing at which plaintiff's attorney made an oral presentation and submitted a written statement on plaintiff's behalf and plaintiff spoke in his own behalf; the county manager then conducted an evidentiary hearing at which plaintiff was represented by counsel, who presented evidence and cross-examined witnesses, and at which plaintiff testified in his own behalf; and plaintiff failed to present any real evidence that the county manager relied upon the opinions of the county attorney or county personnel officer in making his decision.

Appeal by plaintiff from order entered 31 October 1996 by Judge Melzer A. Morgan, Jr. in Rockingham County Superior Court. Heard in the Court of Appeals 8 October 1997.

*Puryear and Lingle, P.L.L.C., by David B. Puryear, Jr., for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, a Professional Limited Liability Company, by James R. Morgan, Jr., for defendants-appellees.*

TIMMONS-GOODSON, Judge.

Plaintiff Kyle R. Paschal filed this wrongful termination action on 22 November 1995 against defendants Jerry D. Myers, W. Wayne Garrison, and Rockingham County. In his complaint, plaintiff alleged that he had been terminated from permanent employment with defendant County in violation of his contractual and statutory rights not to be discharged except for adequate cause, in violation of the procedural rights accorded him by the Rockingham County personnel ordinance, in violation of the state personnel records privacy law, and in violation of his due process rights under the Law of the Land Clause of the North Carolina Constitution. Defendants filed their answer on 26 December 1995, denying the material allegations of plaintiff's complaint, and asserting affirmative defenses including governmental and official immunity, failure to exhaust administrative remedies, and failure to mitigate damages. Thereafter, on 12 September 1996, defendants filed a motion for summary judgment. This motion was heard by Judge Melzer A. Morgan, Jr. during the 11 October 1996 civil session of Rockingham County Superior Court.

The evidence tends to show that plaintiff had been employed by defendant County with its Emergency Medical Service (hereinafter

"EMS") as an emergency medical technician-paramedic since August 1992. In June 1993, plaintiff became a full-time, non-probationary employee of defendant County. At all times during plaintiff's employment, defendant County had an established employment policy, which had been enacted as an ordinance of Rockingham County.

On 20 May 1995, plaintiff fractured the little finger on his right hand. On 22 May 1995, plaintiff completed a North Carolina Industrial Commission Form 19 (hereinafter "I.C. Form 19"), indicating that he had been injured during and in the course of employment. This form was submitted to an EMS officer on or about 1 June 1995.

Upon receiving a copy of this form, plaintiff's immediate supervisor, Lisa King, asked EMS Training Officer, Phyllis Paschall, to investigate plaintiff's statement that he had been injured during and in the course of employment. King told Paschall that plaintiff had previously indicated that he had hurt his finger while vacuuming, but had told other EMS employees that he had injured his finger during and in the course of employment, in accordance with the statement on the I.C. Form 19 injury report.

Plaintiff met with Paschall and King on 1 June 1995, and was suspended from employment pending investigation of King's allegations that plaintiff had falsified the I.C. Form 19 injury report. Subsequently, Paschall took the statements of several of plaintiff's co-workers, who confirmed King's version of the cause of plaintiff's injury. These witnesses stated that they had heard plaintiff tell King, during a telephone conversation, that he had injured his finger while vacuuming. Paschall also listened to a C-Comm tape of plaintiff's telephone calls on the evening of 20 May 1995, during which plaintiff discussed the cause of his injury. As a result of the information obtained during her investigation, on 5 June 1995, Paschall executed a written notice of termination discharging plaintiff from employment. The reasons for termination stated therein included falsification of a county record for profit, and discourteous treatment of another county employee. Plaintiff has at all times denied telling King that he had injured himself while vacuuming. Moreover, plaintiff contends that he never had notice of any problems with his job performance, specifically, in reference to discourteous treatment of another county employee before termination.

On 13 June 1995, plaintiff submitted a written request for review of his termination to the Director of Rockingham County EMS, defendant W. Wayne Garrison. Defendant Garrison held a conference

on this matter on 8 August 1995. Upon review of the evidence utilized by Paschall in making her decision, defendant Garrison issued a ruling on 14 August 1995, upholding plaintiff's dismissal for the reasons stated in Paschall's 5 June 1995 notice of termination. Defendant Garrison concluded that dismissal was proper because plaintiff's alleged misrepresentation of the cause of his finger injury indicated that plaintiff "may lie about giving medicine."

Thereafter, plaintiff requested a hearing before defendant Jerry D. Myers, Rockingham County Manager. Defendant Myers conducted a full, evidentiary hearing in this matter on 3 October 1995, and, on 27 October 1995, issued a ruling upholding plaintiff's termination. Therein, defendant Myers found that plaintiff had injured his finger on 20 May 1995 during a violent altercation with a guest of the department, Amanda West, resulting in their both having to receive medical treatment; that this altercation led to plaintiff's injury; and that plaintiff made a conscious effort to mislead his supervisors as to the cause of his injury.

After reviewing all of the evidence before him, Judge Morgan entered an order granting defendants' motion for summary judgment. Plaintiff appeals.

Plaintiff brings forth but one assignment of error on appeal, by which he argues that the trial court erred in granting defendants' motion for summary judgment. For the reasons discussed herein, we cannot agree, and accordingly, affirm the decision of the trial court.

Summary judgment is properly granted if, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact, and any party is entitled to judgment as a matter of law. N.C.R. Civ. P. 56. The moving party bears the burden of showing a lack of issue of triable fact, and may meet this burden by showing the non-moving party cannot prove the existence of an essential element of his claim or cannot surmount an affirmative defense which would bar the claim. *Messick v. Catawba County*, 110 N.C. App. 707, 712, 431 S.E.2d 489, 492-93 (citing *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62-63, 414 S.E.2d 339, 342 (1992)), *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993).

## I. Breach of Contract Claim

[1] First, plaintiff contends that his contract of employment was governed by the County's personnel policies included in its Employee

Handbook. As those policies were properly a part of plaintiff's contract of employment, plaintiff asserts that there are disputed issues of fact as to whether defendants carried out his suspension and dismissal in breach of his contract of employment.

Irrefutably, North Carolina caselaw mandates that in the absence of an employment contract for a definite period, the employment is presumed to be "at will," terminable at the will of either employer or employee. *Soles v. City of Raleigh Civil Service Comm.*, 345 N.C. 443, 446, 480 S.E.2d 685, 687, *reh'g denied*, 345 N.C. 761, 485 S.E.2d 299 (1997). Our Supreme Court has recognized two exceptions to the terminable-at-will doctrine: (1) "where plaintiff-employee is assured that he cannot be fired except for incompetence and 'where the employee gives some special consideration in addition to his services,' " *Howell v. Town of Carolina Beach*, 106 N.C. App. 410, 416, 417 S.E.2d 277, 280 (1992) (quoting *Sides v. Duke University*, 74 N.C. App. 331, 345, 328 S.E.2d 818, 828, *disc. review denied*, 314 N.C. 331, 333 S.E.2d 490, *and disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985)) (alteration in original); and (2) "where an employment contract is terminated 'for an unlawful reason or purpose that contravenes public policy.' " *Id.* at 416, 417 S.E.2d at 281 (quoting *Coman v. Thomas Co.*, 325 N.C. 172, 175, 381 S.E.2d 445, 447 (1989)). Additionally, "in some circumstances employee manuals setting forth reasons and procedures for termination may become part of the employment contract even where an express contract is nonexistent," so as to negate the terminable-at-will doctrine. *Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 655, 412 S.E.2d 97, 99 (1991) (citing *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986)), *cert. denied*, 331 N.C. 119, 415 S.E.2d 200 (1992). Notably, however, " 'unilaterally promulgated employment manuals or policies do not become [a] part of the employment contract, unless expressly included [therein].' " *Howell*, 106 N.C. App. at 414, 417 S.E.2d at 279 (quoting *Walker*, 77 N.C. App. at 259, 335 S.E.2d at 83-84).

In the instant case, plaintiff was a non-probationary, permanent employee for an indefinite term, i.e., an at-will employee. Further, plaintiff's case does not come within any of the public policy exceptions to the terminable-at-will doctrine. Plaintiff has not presented any evidence to show that the County's Employee Handbook was given to him at the time of his employment, that he had to sign indicating its receipt and his understanding of the Handbook's contents, or any other evidence that the Handbook's personnel policies had

been made a part of his employment contract. Plaintiff maintains, however, the mere fact that the Rockingham County Board of County Commissioners had adopted, as an ordinance, the County's personnel policies contained in the Handbook demands that the Handbook's personnel policies were a part of his contract. This argument is unpersuasive.

This Court in *Howell*, 106 N.C. App. 410, 417 S.E.2d 277, was presented with similar circumstances, where the Town Council of Carolina Beach had adopted and issued a "Personnel Policies and Procedures Manual (pursuant to section 160A-164 of the North Carolina General Statutes)." In that case, this Court declined to hold that the mere adoption of the Town's personnel policies as an ordinance would necessitate the conclusion that the policies had been included in the plaintiff's employment contract. *Id.* In accordance with *Howell*, we decline to hold that mere adoption of Rockingham County's Employee Handbook's personnel policies as an ordinance, makes those personnel policies a part of plaintiff's employment contract. As plaintiff has failed to show that the Handbook's personnel policies were expressly included in his employment contract, summary judgment was properly granted on plaintiff's breach of contract claim.

## II. Due Process Claim

Plaintiff also contends that there are issues of fact as to whether defendants denied him due process of law by failing to adequately and fairly notify him prior to his termination and post-termination appeals of the evidence, which was the alleged basis for his suspension and dismissal, and by rendering decisions which were arbitrary and capricious.

[2] While defendants contend otherwise, plaintiff has sufficiently shown that an enforceable property interest in continued employment was "created by ordinance," in this case. *See Burwell v. Griffin*, 67 N.C. App. 198, 209, 312 S.E.2d 917, 924 (quoting *Bishop v. Wood*, 426 U.S. 341, 344-45, 48 L. Ed. 2d 684, 690 (1976)), *appeal dismissed and disc. review denied*, 311 N.C. 303, 317 S.E.2d 678 (1984). Herein, the Employee Handbook, which was also a town ordinance, created the reasonable expectation of continued employment within the meaning of the Due Process Clause. *See Howell*, 106 N.C. App. at 417, 417 S.E.2d at 281 (comparing the Town of Carolina Beach's ordinance to the rights given State employees pursuant to N.C. Gen. Stat. § 126-35 (1991), which has been held to create a reasonable expecta-

tion of employment and a property interest within the meaning of the Due Process Clause). We must, therefore, decide whether plaintiff received the process he was due.

[3] In order to facilitate discussion of this question, however, we must first address the capacities in which the defendants are being sued. We note that while the caption of the complaint alleges that plaintiff is suing defendants Garrison and Myers in their individual and official capacities, the complaint fails to assert any allegations that show that these defendants were acting in any manner other than their official capacities. Moreover, the general rule is that "a 'public official' is immune from personal liability for 'mere negligence' in the performance of those duties, but he is not shielded from liability if his alleged actions were 'corrupt or malicious' or if 'he acted outside and beyond the scope of his duties.' " *Wiggins v. City of Monroe*, 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985) (citations omitted), *quoted in Thompson Cadillac-Oldsmobile, Inc. v. Silk Hope Automobile, Inc.*, 87 N.C. App. 467, 469, 361 S.E.2d 418, 420 (1987), *disc. rev. denied*, 321 N.C. 480, 364 S.E.2d 672 (1988).

The facts fail to show any actions of the magnitude to pierce the cloak of official immunity, so as to allow defendants Myers and Garrison to be sued in their individual capacities. We conclude, then, that defendants Myers and Garrison may only be sued in their official capacities, as Rockingham County Manager and Director of Rockingham County EMS, respectively. The County, of course, may be derivatively liable for the actions of defendants Myers and Garrison if they have waived immunity from suit. *See* N.C. Gen. Stat. § 153A-435 (1991).

*A. Pre-termination Due Process*

[4] In *Cleveland Bd. of Educ. v. Loudermill*, the United States Supreme Court determined that the Due Process Clause requires " 'an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' " 470 U.S. 532, 542, 84 L. Ed. 2d 494, 503-04 (1985) (citation omitted) (emphasis omitted). The employee must have a pre-termination opportunity to respond to the allegations against him. This pre-termination opportunity to respond is " 'an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 349, 342 S.E.2d 914, 922 (quoting *Loudermill*, 470 U.S. at 545-46, 84

L. Ed. 2d at 506), *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986). The employer must also provide the employee with "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill*, 470 U.S. at 546, 84 L. Ed. 2d at 506. This evidence need not include all evidence on a charge, or even the documentary evidence in support thereof; rather, due process only requires that a descriptive explanation be given the employee so as to permit him to identify that conduct giving rise to the dismissal so that the employee may make a response. *Linton v. Frederick County Bd. of County Com'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992).

In this case, on 1 June 1995, plaintiff met with Lisa King, his supervisor, and EMS Training Officer, Phyllis Paschall. At this time, Paschall gave plaintiff a copy of King's letter to Paschall, indicating that plaintiff had told King that he broke his finger while vacuuming, but had stated on his I.C. Form 19 injury report that he had broken his finger during and in the course of employment. Plaintiff denied these allegations. Plaintiff was informed that he had the opportunity to make a written statement, explaining his side of the story. Finally, Paschall gave plaintiff a short memorandum informing him that he was being suspended for three days, pending investigation of King's allegations, and instructing him to report to Paschall on 5 June 1995 for further discussion and action.

At plaintiff's 5 June 1995 meeting with King and Paschall, the three listened to a C-Comm tape of plaintiff's telephone calls on the night that plaintiff hurt his finger. While King and Paschall believed that the C-Comm tape substantiated King's allegations, plaintiff contended that they were misinterpreting the tape's contents. Again, plaintiff denied any allegation of wrongdoing. Plaintiff presented to Paschall a three-page, written incident report explaining his side of the story. Paschall concluded that plaintiff was being untruthful and terminated him. Paschall gave plaintiff a memorandum which summarized her investigation of the allegations against him and her reasons for the dismissal.

We conclude that the 1 and 5 June 1995 meetings between plaintiff and Paschall meet the pre-termination due process requirements. Accordingly, we now proceed with plaintiff's contention that he was deprived of a fair and impartial hearing during the post-termination review of his dismissal, because defendant Garrison did nothing to investigate the discrepancies in the record, and defendant Myers had

been persuaded by others that plaintiff's evidence was redundant and a waste of time.

## B. Post-termination Due Process

[5] To make a due process claim based upon the lack of impartiality of a decision maker, an employee "must show that the decision-making board or individual possesses a disqualifying personal bias." *Leiphart*, 80 N.C. App. at 354, 342 S.E.2d at 924 (citing *Hortonville Dist. v. Hortonville Ed. Asso.*, 426 U.S. 482, 49 L. Ed. 2d 1 (1976)). Notably, this Court stated in *Leiphart*, that the "mere appearance of impropriety, standing alone, is not sufficient grounds for disturbing [a decision to terminate an employee]." *Id.* Nor does " '[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role . . . disqualify the decision maker.' " *Id.* at 354, 342 S.E.2d at 925 (quoting *Hortonville*, 426 U.S. at 493, 49 L. Ed. 2d at 9).

In the instant case, plaintiff's dismissal was first reviewed by defendant Garrison on 8 August 1995. Defendant Garrison reviewed all of the evidence relied upon by Paschall in her 5 June 1995 decision to terminate plaintiff from employment before upholding Paschall's decision to terminate plaintiff. In addition, plaintiff's attorney made an oral presentation and argument on plaintiff's behalf. Counsel submitted written statements and plaintiff was given an opportunity to speak on his own behalf. Finally, prior to this hearing, plaintiff was provided with all of the evidence relied upon by Paschall in making her decision to dismiss him, including written statements that indicated that several co-workers had heard plaintiff tell King that he had broken his finger while vacuuming, and a written statement of "Buddy" Aswell, suggesting that plaintiff may have broken his finger while engaging in "horseplay" with Amanda West. Aswell's statement noted that this "horseplay" had escalated into a fight.

On 3 October 1995, defendant Myers, the County Manager, held a "full-blown" evidentiary hearing to review plaintiff's dismissal. At that hearing, plaintiff was again represented by counsel and given an opportunity to present evidence. Plaintiff's attorney was permitted to question and cross-examine all of the witnesses at the hearing; and again, plaintiff testified on his own behalf. After reviewing all of the evidence presented, defendant Myers, in a 27 October 1995 letter, informed plaintiff that his termination was being upheld based upon evidence that plaintiff had made a conscious effort to mislead his supervisors about the facts surrounding the injury to his finger.

PASCHAL v. MYERS

[129 N.C. App. 23 (1998)]

Although plaintiff argues that the inquiry by defendants Garrison and Myers into his dismissal was deficient, we cannot agree. The Garrison hearing was conducted in accordance with the County's personnel policy allowing such review. Further, plaintiff fails to present any real evidence that defendant Myers relied upon the opinions of the County Attorney or County Personnel Officer in making his decision, so as to affect his impartiality. Mere allegations without more, cannot serve to create a genuine issue of fact so as to prevent summary judgment. *Messick*, 110 N.C. App. at 713, 431 S.E.2d at 493 (citing *Gudger v. Furniture, Inc.*, 30 N.C. App. 387, 389, 226 S.E.2d 835, 837 (1976)).

Any inquiry into plaintiff's personnel records was permitted by defendant Garrison (defendant Myers was erroneously listed in the complaint) pursuant to section 153A-98 of our General Statutes. *See* N.C. Gen. Stat. § 153A-98 (1991). Further, any argument that defendant Myers somehow breached County personnel policy by permitting witnesses to remain in the room during his hearing, is specious as the County personnel policy specifically provides that "witnesses may attend" an appeal hearing before the County Manager. Accordingly, we conclude that plaintiff received due process in not only his pre-termination hearings, but also in the post-termination hearings.

As plaintiff's breach of contract and due process claims against defendants Myers and Garrison fail, so too must any derivative claims of liability against the County. Further, plaintiff's claims for violation of General Statutes section 153A-98 and wrongful discharge are not argued on brief (or if argued, are without citation to authority) and are, therefore, deemed abandoned. N.C.R. App. 28(b)(5). In sum, because there are no triable issues of fact presented in this case, we affirm the trial court's order of summary judgment.

Affirm.

Judges GREENE and JOHN concur.