JAMES F. LOVE, III, INDIVIDUALLY, AND L&L PARTNERSHIP, A NORTH CAROLINA PARTNERSHIP v. CARLTON TYSON, TYSON REALTY, INC., SANFORD L. STEELMAN, SUBSTITUTE TRUSTEE FOR NATIONSBANK, RAY D. VAUGHN, TRUSTEE FOR WACHOVIA BANK OF NORTH CAROLINA, N.A., AND OKEY M. LANDERS, JR. AND WIFE, CAROL D. LANDERS

No. 9420SC527

(Filed 15 August 1995)

1. **Attorneys at Law § 36 (NCI4th); Parties § 12 (NCI4th)— disqualification of attorney—only one defendant previously represented by attorney—standing of either defendant to raise issue**

    One defendant had standing to raise the issue of attorney disqualification, though that defendant did not allege that plaintiffs' attorney had represented him in the past but only that the attorney had represented "codefendants," since both codefendants were equally at risk to lose a substantial amount of money and real estate should the plaintiffs prevail; the attorney's representation of plaintiffs, when there had been no consent to this arrangement by the codefendant previously represented by the attorney, was likely to interfere with both codefendants' rights to a fair hearing; and defendant met the test of standing in that he was an aggrieved party and had suffered a "distinct and palpable injury" likely to be redressed by granting the requested relief.

    **Am Jur 2d, Attorneys at Law §§ 49, 119, 184; Parties §§ 34 et seq.**

2. **Attorneys at Law § 36 (NCI4th)— disqualification of attorney—sufficiency of findings of fact**

    The trial court's disqualification of plaintiffs' attorney was based on the attorney's prior representation of a codefendant, the codefendant's failure to agree to the attorney's representation of plaintiffs, and the possibility that the representation of plaintiffs might be adverse to defendant; therefore, the trial court was not required to make a finding of fact that the attorney had previously represented defendant "in similar transactions to the one in dispute" in order to disqualify the attorney.

    **Am Jur 2d, Attorneys at Law §§ 49, 184-187.**

    **Representation of conflicting interests as disqualifying attorney from acting in a civil case. 31 ALR3d 715.**

**3. Attorneys at Law § 36 (NCI4th)— disqualification of attorney—sufficiency of evidence**

The evidence was sufficient to support the trial court's order disqualifying plaintiffs' attorney where it tended to show that the attorney had represented the partnership comprised of the individual plaintiff and defendant in numerous transactions similar to the one in dispute over a five-year period; the attorney had represented the individual plaintiff and the defendant in various matters; and defendant objected to the attorney's representation of plaintiffs because he thought it would be adverse to his interests.

**Am Jur 2d, Attorneys at Law §§ 49, 184-187.**

**Representation of conflicting interests as disqualifying attorney from acting in a civil case. 31 ALR3d 715.**

Appeal by plaintiff from order entered 3 March 1994 by Judge Preston Cornelius in Union County Superior Court. Heard in the Court of Appeals 27 January 1995.

Defendants Carlton Tyson and Tyson Realty Inc. filed a motion in Union County Superior Court for an order compelling plaintiffs' attorney, Frank L. Bryant, to withdraw as counsel of record for plaintiffs. Judge Preston Cornelius heard the motion on 21 February 1994. On 3 March 1994 he granted defendants' motion, entering an order disqualifying Frank L. Bryant from further representation of the plaintiffs in this action. From this order, plaintiffs appeal.

*Perry and Bundy, by H. Ligon Bundy, for plaintiff-appellants.*

*Singer & McGirt, P.A., by Allan W. Singer, and Griffin, Caldwell, Helder & Lee, by Jake C. Helder, for defendant-appellees.*

McGEE, Judge.

In 1984 plaintiff James F. Love, III and defendant Okey M. Landers, Jr., became general partners in L&L Partnership, a business organized to acquire, develop and sell real property and other assets. Landers managed partnership assets in North and South Carolina and Love oversaw the assets in West Virginia.

Affidavits filed by the parties show at least ten transactions were completed under this partnership arrangement, many involving new automobile dealerships. Depending upon the requirements of the par-

**LOVE v. TYSON**

[119 N.C. App. 739 (1995)]

ticular automobile manufacturer, the ownership in the various car dealerships was often held separately by Landers or Love with an oral agreement between the two partners that each held that particular interest equally for the benefit of the other unnamed partner. L&L Partnership employed attorney Frank L. Bryant to handle several of these real property transactions.

Problems developed in the partnership and in December, 1990 Bryant filed an action in Mecklenburg County Superior Court on behalf of Love against Landers, L&L Partnership and Landers Oldsmobile-Cadillac, Inc. Among other things, Love alleged Landers mishandled partnership assets and conducted unauthorized land transactions, some of which involved defendants Carlton Tyson and Tyson Realty, Inc.

In March 1992, Landers filed a motion in the Mecklenburg County action requesting Bryant be removed as counsel for plaintiff under Rule 5.2(C) of the Rules of Professional Conduct. Landers claimed that in the past, Bryant had been involved with L&L Partnership in various property transactions and that Bryant would be a necessary witness in the lawsuit. Judge Claude Sitton denied the motion saying "it appears to the Court that, at this time, it is not apparent that counsel for the Plaintiff should withdraw under the provisions of Rule 5.2(c) of the North Carolina Code of Professional Conduct."

Love filed a second lawsuit against Landers in June 1993 in Union County Superior Court and Love was joined as a plaintiff by L&L Partnership. Among others, they named Carlton Tyson and Tyson Realty, as well as Okey Landers and his wife, Carol, as defendants in the action. This complaint was an action to quiet title to 68.643 acres of land located in Union County, the bulk of which plaintiffs alleged Landers fraudulently conveyed to one of Landers' corporations, Myrtle Beach Chrysler Plymouth, Inc., with a smaller acreage conveyed to Carlton Tyson and Ty-Par Realty, Inc.

In February 1994, defendants Carlton Tyson and Tyson Realty, Inc. filed a motion to disqualify Bryant and his law firm from further representing plaintiffs in this Union County action. Defendants argued Bryant and his firm previously represented co-defendant Landers in transactions similar to the one now in dispute and that Landers had not consented to such representation. Judge Preston Cornelius heard the motion on 21 February 1994. In an order filed 3 March 1994, the trial court granted the motion to disqualify Bryant saying:

It appears to the court that Frank L. Bryant and the law firm of Morton, Bryant, McPhail & Hodges have previously represented Plaintiff L & L Partnership, a general partnership comprising of Love and Landers, and Defendant Landers, ~~in similar transactions to the one in dispute in this case~~ [handwritten initials: PC] and defendant Landers has not consented to such representation.

Plaintiffs objected to the trial court's order disqualifying Bryant from further representing plaintiffs in this matter and they have brought forward three arguments: (1) defendants Carlton Tyson and Tyson Realty, Inc. did not have standing to raise the issue of attorney disqualification; (2) there were insufficient facts to support the court's order; and (3) there was insufficient evidence to sustain the court's ruling. We disagree with plaintiffs' contentions and we affirm the decision of the trial court.

I. STANDING

**[1]** Tyson's disqualification motion states that Bryant "[has] previously represented *co-defendants* in similar transactions to the one in dispute with the Plaintiff and the record does not disclose a consent to such representation by the co-defendant. . . ." (emphasis added). Plaintiffs argue Tyson does not have standing to raise the issue of attorney disqualification because Tyson has not alleged Bryant represented Tyson in the past, only that Bryant represented "co-defendants." Plaintiffs cite two cases in support of their contention that Tyson does not have standing. We find both cases distinguishable.

In *Saintsing v. Taylor*, 57 N.C. App. 467, 291 S.E.2d 880, *disc. review denied*, 306 N.C. 558, 294 S.E.2d 224 (1982), plaintiffs sued their foster child, Evelyn Taylor, and her former husband, Norman Taylor, regarding a real estate matter. Plaintiffs hired as their attorney in the case the attorney who had previously represented co-defendant Evelyn Taylor in her divorce proceeding against Norman Taylor. Co-defendant Norman Taylor objected to this representation on the grounds that it was a conflict of interest and he would suffer prejudice by his former wife's attorney now representing plaintiffs in this matter. This Court stated:

> We agree with the trial judge that defendant has no standing to complain of a conflict. The plaintiffs in this case knew of Attorney Haworth's previous representation of Evelyn Taylor and both Evelyn Taylor and the plaintiffs agreed to Haworth's representation of plaintiffs in this action.

*Saintsing*, 57 N.C. App. at 471, 291 S.E.2d at 883. *Saintsing* is distinguishable from this case because the co-defendant consented to her attorney's representation of the plaintiffs in the real estate matter. Because of the previous client's consent, the Rules of Professional Conduct were not breached and, therefore, co-defendant Norman Taylor lacked standing to pursue the issue since there was no justiciable controversy.

The other case which plaintiff cites is *Swenson v. Thibaut,* 39 N.C. App. 77, 250 S.E.2d 279 (1978), *disc. review denied, appeal dismissed,* 296 N.C. 740, 254 S.E.2d 181-83 (1979). Swenson is a derivative shareholder lawsuit in which thirty-three minority shareholders of All American Assurance Company brought suit in the name of All American against the named defendants, who were officers and directors of All American, alleging "self-dealing and negligent acquiescence . . . amounting to 'looting' of [All American's] assets." *Swenson,* 39 N.C. App. at 84, 250 S.E.2d at 285. The defendants filed a motion to disqualify plaintiffs' attorney based, among other things, on a conflict of interest in that plaintiffs' attorney was using confidences gained by having previously represented All American. The *Swenson* Court first discussed the unique nature of a derivative shareholder lawsuit and whether a corporation can defend itself against a derivative action when it is a named party defendant. The court held "the corporation All American should not be allowed to defend this action on its merits" and it dismissed portions of All American's appeal for lack of standing. *Swenson,* 39 N.C. App. at 100, 250 S.E.2d at 294. As to the attorney disqualification issue, the Court stated:

> The representation by CLP&Y [the attorney], whether actually or derivatively of All American, has continued from its inception to serve *only* the interests of the corporate entity. . . . [W]e held above that the corporate entity All American must be treated as a party plaintiff for purposes of litigation on the merits of this action. . . . It is abundantly clear from the record that no confidential relationship was ever developed between any of the individual defendants and CLP&Y, and so if any privilege is to be asserted as to any communications made . . . it must be asserted by the corporate defendant or not at all. We conclude that All American lacks standing as a party plaintiff to assert this privilege against itself. Likewise, the individual defendants have no standing, upon the record before us, to assert this privilege. . . .

*Swenson*, 39 N.C. App. at 112, 250 S.E.2d at 301. In effect, the *Swenson* Court determined that All American was a party plaintiff, not a defendant, and therefore defendants lacked standing to pursue the attorney disqualification issue.

This case presents different facts from *Saintsing* or *Swenson*. We have the lawyer of one co-defendant now representing the plaintiff without that co-defendant's consent; yet it is the other co-defendant who filed the motion to disqualify his co-defendant's attorney.

This Court has defined standing as a " 'distinct and palpable injury' likely to be redressed by granting the requested relief." *Landfall Group v. Landfall Club, Inc.*, 117 N.C. App. 270, 273, 450 S.E.2d 513, 515 (1994) (quoting *Valley Forge College v. Americans United*, 454 U.S. 464, 488, 70 L. Ed. 2d 700, 719 (1982)). Black's Law Dictionary defines standing as being when "[a] party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy (citation omitted)." Black's Law Dictionary (6th ed. 1990).

Both co-defendants are equally at risk to lose a substantial amount of money and real estate should the plaintiffs prevail. Bryant's representation of plaintiffs, when there has been no consent to this arrangement by the co-defendant previously represented by Bryant, is likely to interfere with both co-defendants' rights to a fair hearing. Therefore, Tyson meets the test of standing in that he is an aggrieved party and has suffered a " 'distinct and palpable injury' likely to be redressed by granting the requested relief." *See Landfall Group*, 117 N.C. App. at 273, 450 S.E.2d at 515. Tyson is equally as entitled to move for disqualification of Bryant and his law firm as is Landers.

II. SUFFICIENCY OF THE FACTS

[2] Plaintiffs next argue the trial court erred in granting the motion to disqualify Bryant because the facts found by the court to support its order are insufficient, as a matter of law, to sustain the ruling. They contend Tyson's disqualification motion was based solely on Bryant's previous representation of Landers, in violation of Rule 5.1(D) of the Rules of Professional Conduct. By the court's striking through the phrase "in similar transactions to the one in dispute" and only disqualifying Bryant because he had "previously represented Plaintiff L & L Partnership, a general partnership comprising of Love and Landers, . . . and defendant Landers has not consented to such

representation," plaintiffs argue the trial court erred as a matter of law because the language, "in similar transactions to the one in dispute," is a requirement under Rule 5.1(D).

Defendants counter that there is sufficient evidence to support the court's order and that there is nothing in the record to support plaintiffs' conclusion that only Rule 5.1(D) is implicated in their motion. They point out there is evidence that over the span of several years, Bryant handled a variety of legal matters for Landers both personally and in his capacity as a general partner in L&L and there is no evidence of Bryant ever having terminated this attorney-client relationship, or of Landers having given his consent to Bryant's representation of plaintiffs.

After careful review of the record, we disagree with plaintiffs that only Rule 5.1(D) is implicated. Neither the motion to disqualify, the supporting affidavits, nor the court's order specifically address Rule 5.1(D), and there is evidence that other Rules of Professional Conduct, including the rules relating to client confidentiality, may have been at issue. There is nothing in the record showing Bryant terminated his representation of Landers and under Rule 5.1(A) of the Rules of Professional Conduct, a lawyer is unable to represent a client if that representation is likely to be adverse to another client unless the lawyer believes the representation will not be adverse and the clients consent to the arrangement.

### III. Sufficiency of the Evidence

**[3]** Plaintiffs' final argument is that there is insufficient evidence to sustain the trial court's ruling on the disqualification motion. We disagree.

"Decisions regarding whether to disqualify counsel are within the discretion of the trial judge and, absent an abuse of discretion, a trial judge's ruling on a motion to disqualify will not be disturbed on appeal." *Travco Hotels v. Piedmont Natural Gas Co.*, 332 N.C. 288, 295, 420 S.E.2d 426, 430 (1992).

In a sworn affidavit, Bryant admitted he had represented L&L Partnership "in connection with financing and transfer of another parcel of real estate in Union County, and financing and transfer of a parcel of real estate belonging to the partnership located in Myrtle Beach, South Carolina." There were allegations that Bryant had, over a five-year period, represented L&L Partnership in various other transactions including: the attempted sale of Myrtle Beach Chrysler

Plymouth; the sale of an automobile dealership to Elmer Moore, along with certain environmental claims arising out of the sale of this property; real estate transactions involving the Jim Brown Chevrolet dealership in Myrtle Beach; and loan transactions for Landers Oldsmobile-Cadillac. It was also alleged that Bryant served as counsel individually for both plaintiff Love and defendant Landers. This included representing defendant Landers in a loan transaction when Landers individually borrowed funds to loan to L&L Partnership to pay off an L&L Partnership debt.

Defendant Landers' stated in his affidavit:

9. Attorney Frank Bryant and his law firm has [sic] represented me as a partner in L & L Partnership and as the individual who managed some of these entities on behalf of L & L, such as Elmer Moore Chevrolet and Jim Brown Chevrolet during the same period of time as the [sic] alleged in this complaint. I relied on him and placed confidence in him as the attorney for L & L and myself [sic] in the conduct of some of the affairs of Mr. Love and myself [sic] and Bryant was directly involved in performing legal services for me as a general partner and an individual involving the business conducted between Mr. Love and I [sic] which is presently in dispute.

10. I have objected to Mr. Bryant and his law firm representing the plaintiff in this case and in the Love v. Landers case as it involves patterns of business conduct between his present client and me which are substantially similar or related to the matters in conflict in these cases and believe that his continued involvement on behalf of Mr. Love, whose interests are materially adverse to my interest, is a conflict of interest to which I specifically have not consented.

After a thorough hearing and review of the pleadings, attachments and supporting affidavits, the trial court disqualified Bryant from further representing plaintiffs in this matter. We find there was evidence to support the trial court's decision and the trial court did not abuse its discretion in granting defendants' disqualification motion.

The judgment of the trial court is affirmed.

Judges LEWIS and WYNN concur.