WILLIAM T. SKINNER, Petitioner v. NORTH CAROLINA DEPARTMENT
OF CORRECTION, Respondent

No. COA01-1121

(Filed 3 December 2002)

### 1. Administrative Law— sufficiency of evidence—whole record test

The superior court was required to perform a whole record test to determine whether there was substantial evidence to support demotion of a prison food service supervisor for not maintaining a sanitary and orderly kitchen.

### 2. Public Officers and Employees— food service supervisor demoted—dirty kitchen—inconsistent serving lines

There was substantial evidence in the whole record to support the demotion and transfer of a prison food service supervisor for unsatisfactory job performance where the evidence included testimony about unsanitary conditions, deviation from posted menus, and inconsistent serving lines, which can cause problems with inmates.

### 3. Public Officers and Employees— demoted food service supervisor—inconsistent explanations of conduct—immaterial

Isolated erroneous findings regarding inconsistent explanations from a demoted prison food service supervisor were not material to the issue of unsatisfactory job performance.

### 4. Public Officers and Employees— demotion—racial discrimination—prima facie case

The State Personnel Commission did not err by finding that there was no credible evidence of intentional racial discrimination in the demotion of a prison food supervisor where petitioner did not make out a prima facie case of discrimination. He was not replaced by a person who is not a member of a minority group, there was no evidence that non-minority supervisors were retained under similar circumstances, a Caucasian food service supervisor was also recommended for demotion and transfer on the same grounds, and the administrator who made the recommendations is African-American.

**5. Public Officers and Employees— due process—employment discipline**

A demoted prison food service supervisor was given the due process to which he was entitled where he received two detailed written warning letters; received a notice outlining the specific grounds for the proposed disciplinary action; attended a pre-demotion conference and was given the opportunity to respond to the charges of unsatisfactory job performance; and set forth no evidence that he would not have been demoted had he been given an action plan following the written warnings.

**6. Public Officers and Employees— unsatisfactory job performance—prison food service**

The Department of Correction had just cause to demote a food service supervisor for unsatisfactory job performance where there was substantial evidence that petitioner did not satisfactorily meet his job requirements, which included supervising inmate workers and ensuring that the kitchen was kept in a clean and orderly fashion; petitioner received two written warnings about his poor job performance; and his ability to perform satisfactorily was particularly critical because seemingly innocuous incidents could cause security risks in the prison dining hall.

Appeal by petitioner from order entered 4 June 2001 by Judge David Q. Labarre in Wake County Superior Court. Heard in the Court of Appeals 6 June 2002.

*Browne, Flebotte, Wilson & Horn, P.L.L.C., by Joy Rhyne Webb, for petitioner appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Neil Dalton, for the State.*

TIMMONS-GOODSON, Judge.

William T. Skinner ("petitioner") appeals from an order of the trial court affirming a decision and order of the North Carolina State Personnel Commission ("the Commission"). In its decision, the Commission affirmed the disciplinary action taken by petitioner's employer, the North Carolina Department of Correction ("respondent"), in demoting petitioner. After a careful review of the record, we affirm the order of the trial court.

The facts pertinent to this appeal are as follows: Petitioner was employed with respondent in the position of "Correction Food Service Supervisor I" at Pasquotank Correctional Institute ("Pasquotank"). As a food service supervisor, petitioner oversaw the preparation and distribution of food to the inmate population during his shift, and was responsible for maintaining the kitchen in a sanitary and orderly fashion. Petitioner's duties included supervising food service assistants, who in turn supervised the inmates assigned to work in the food service department.

On 31 December 1996, petitioner received a written warning for poor job performance. The warning reprimanded petitioner for allowing an unauthorized deviation from the approved menu at Pasquotank on 11 December 1996. On 1 May 1997, respondent issued a second warning to petitioner for unsatisfactory job performance, due to petitioner's alleged "failure to maintain proper sanitary conditions in the kitchen." On 29 September 1997, petitioner received notice of a "pre-demotion conference" to be held on the following day. The notice advised petitioner of a proposed recommendation to demote him and listed seven specific incidents involving unacceptable job performance by petitioner. The notice invited petitioner to attend the conference in order to respond to the issues supporting the proposed demotion and transfer. Petitioner attended the conference, submitting both an oral and written statement.

On 5 November 1997, respondent transferred petitioner to the Currituck Correctional Center. On 29 December 1997, respondent notified petitioner of his demotion to the position of correctional officer. The notice set forth several grounds for the disciplinary action, including (1) petitioner's failure to maintain a properly balanced serving line; (2) tardy delivery of food; (3) unsanitary conditions in the kitchen; (4) substitution of menu items without approval; and (5) failure to ensure that dishware was properly cleaned before distribution to the inmates.

After unsuccessfully pursuing an internal agency appeal of his demotion, petitioner filed two petitions for a contested case hearing with the Office of Administrative Hearings, alleging racial discrimination and improper procedural errors by respondent. These petitions were consolidated for review and came before an administrative law judge on 15 and 16 March 1999. In a recommended decision filed 7 May 1999, the administrative law judge concluded that, although respondent did not discriminate against petitioner on the basis of his race, respondent lacked just cause in demoting and transferring peti-

tioner. The administrative law judge therefore recommended that petitioner be reinstated to his former position.

The matter came before the State Personnel Commission on 19 August 1999. In its final decision and order dated 22 September 1999, the Commission agreed with the administrative law judge's conclusion that respondent did not discriminate against petitioner on the basis of his race. The Commission determined, however, that respondent's decision to demote petitioner was supported by just cause due to his unsatisfactory job performance and therefore affirmed the disciplinary action.

Petitioner filed a petition for judicial review in Wake County Superior Court on 21 October 1999. Upon review of the whole record, the trial court entered an order affirming the decision and order by the Commission. From this order, petitioner appeals.

_____

On appeal, petitioner contends that the trial court erred in concluding that the Commission's final decision was supported by substantial evidence of record. Petitioner also asserts that several of the Commission's conclusions of law are erroneous, and that the trial court therefore erred in affirming the Commission's decision. After careful review of the record, we affirm the order of the trial court.

[1] Upon appeal from an order of the superior court entered after a review of an agency decision, the appellate court must examine the trial court's order to determine first, whether the trial court exercised the appropriate standard of review, and secondly, whether the trial court properly applied that standard to the record before it. *See ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). The standard of review to be utilized by the superior court depends upon the issues raised in the petition for judicial review. *See id.* "When the petitioner contends the agency decision was affected by error of law . . . *de novo* review is the proper standard; if it is contended the agency decision was not supported by the evidence . . . or was arbitrary and capricious . . . the whole record test is the proper standard." *R.J. Reynolds Tobacco Co. v. N.C. Dep't of Env't & Natural Res.*, 148 N.C. App. 610, 614, 560 S.E.2d 163, 166, *disc. review denied*, 355 N.C. 493, 564 S.E.2d 44 (2002). "The reviewing court may be required to utilize both standards of review if warranted by the nature of the issues raised." *Id.*

In the instant case, petitioner alleged that the Commission's decision was not supported by the evidence. Thus, the superior court

was required to perform a whole record test to determine whether the administrative agency's decision was supported by substantial evidence.

"The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Substantial evidence is that which a reasonable mind would regard as adequately supporting a particular conclusion. *See Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 62, 468 S.E.2d 557, 560, *cert. denied*, 344 N.C. 629, 477 S.E.2d 37 (1996). Under the whole record test, the reviewing court must take into account both the evidence that justifies the agency's decision and the contradictory evidence from which a different result could be reached. *See R.J. Reynolds Tobacco Co.*, 148 N.C. App. at 617, 560 S.E.2d at 168. Under this standard, "the reviewing court is not allowed to replace the agency's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different conclusion had the matter been before it *de novo*." *Id.* at 618, 560 S.E.2d at 168.

In the case *sub judice*, the trial court indicated that it had employed the "whole record" test, which was the proper standard of review. Inasmuch as the record on appeal indicates that the trial court applied the "whole record" test, our only question is whether the court did so properly. *See N.C. Dept. of Correction v. Myers*, 120 N.C. App. 437, 441, 462 S.E.2d 824, 827 (1995), *affirmed per curiam*, 344 N.C. 626, 476 S.E.2d 364 (1996).

[2] Petitioner argues that the Commission's findings are not supported by substantial evidence in the record, which in turn do not support the Commission's conclusion that petitioner was demoted and transferred for just cause. We therefore examine the record to determine whether substantial evidence exists to support the Commission's findings.

Petitioner first objects to the Commission's finding that

[o]n the morning of July 31, 1997, Assistant Superintendent Barnes entered the food service area and observed that the two lines serving food were in disarray. One was staffed with three inmate servers, and one was staffed with five. This was causing confusion and disorder among the inmates because one line was moving faster than the other.

Petitioner asserts that this finding is unsupported by the evidence of record. We disagree.

Van Barnes ("Barnes"), the assistant superintendent for custody and operation at Pasquotank, testified at the hearing that he arrived at the food service area where petitioner worked in the late morning hours of 31 July 1997. Barnes explained that when he entered,

> [t]he kitchen was in the process of preparing some trays. I noticed that there was some confusion. The trays for Unit 5 had not left the institutional kitchen, therefore I knew that the food that was going down to Unit 5 would not be on time if it was already 10:45 and the policy says or the instructions given to the kitchen that the food that is to go down to Unit 5 has to leave at 10:40. We were already behind time. Our line is a consistent line which is—with a serving line to the right and a serving line to the left, same amount of compartments on both sides to hold the food. On one side of the line there [were] five inmates, on the other side of the line there [were] three. This was causing the trays going down to Unit 5 not to be prepared as quickly as we needed them to be prepared. I believe that I spoke to [petitioner] . . . and instructed him that we needed to speed this process up and balance the line out and in fact he moved one and balanced it out to four and five instead of five and three.

This testimony by Barnes provides competent and substantial evidence in support of the Commission's finding. We therefore overrule petitioner's exception to this finding.

Petitioner next argues that the Commission erred in finding that petitioner "did not follow clean as you go procedures" in Finding of Fact Number Four. Petitioner contends that this finding is unsupported by the evidence. We first note that the Commission never actually found that petitioner "did not follow clean as you go procedures." Instead, Finding of Fact Number Four recites the following facts:

> 4. Petitioner acknowledged during his pre-disciplinary conference that the "clean as you go procedures["] mean that "once you make a mess, you clean it up." Petitioner acknowledged at the hearing that he did not think he could ever clean the kitchen to the satisfaction of Mr. Creecy. Petitioner had received a written warning on May 1, 1997, for among other things, unsanitary conditions in the kitchen. The written warning stated "As the Food supervisor I, it is your responsibility to ensure that a sufficient

number of staff or inmates are not only performing their assigned duties, but are present to perform those duties as well.["] At his pre-disciplinary conference, the Petitioner stated that the reason the kitchen was such a mess was that he did not have enough janitors on the day in question to clean it up. He did not allege prior to the hearing, during the investigation of these matters nor [at] his pre-disciplinary conference that the clean as you go procedures were in fact being followed. In his written statement he specifically stated that the clean as you go procedures were "suspended" due to the shortage of inmate janitors.

As there is substantial evidence of record to support each of the above-stated facts, the Commission did not err in Finding of Fact Number Four. We overrule this assignment of error.

Petitioner further objects to the Commission's finding regarding an unauthorized substitution of food items and unclean dishware. As to the unauthorized deviation from the approved menu, petitioner testified that he was the food service supervisor assigned to the first shift on 28 August 1997. The first shift supervisor oversees the preparation and serving of the breakfast menu and preparation of the lunch menu. Captain Curtis Brown, a correctional officer at Pasquotank, testified that numerous inmates approached him with complaints about the lunch service on 28 August 1997. Captain Brown stated that the inmates were "frustrated and angry" about a deviation from the posted menu. Captain Brown approached petitioner concerning the problem because petitioner was the only food supervisor in the kitchen at the time the substitution was made. Petitioner argues that, because it was the responsibility of the second shift supervisor to oversee the serving of the lunch that day, he was not responsible for the unauthorized food substitution. The evidence demonstrated, however, that there were no other food supervisors present when the unauthorized substitution occurred.

As to the unclean dishware, the Commission found that

Petitioner addressed the situation regarding cheese being left in the coffee cups on August 29, 1997 as soon as the matter was brought to his attention. These cups had been run through the dishwasher but apparently some residue was left in the bottom of the cups. Petitioner's failure to ensure that the cups were clean was just another example of his inability to produce a clean and sanitary well functioning kitchen.

Petitioner argues that there is no substantial evidence to support this finding. Although petitioner agrees that the coffee cups were not clean, he maintains that it was the responsibility of his assistants to ensure that the cups were clean. As supervisor, however, it was ultimately petitioner's duty to thoroughly inspect and maintain sanitary conditions in the kitchen. The finding by the Commission was therefore supported by substantial evidence.

Petitioner further objects to Finding of Fact Number Nine, in which the Commission found that

> Sanitation of the kitchen during the a.m. shift was an on-going problem while Petitioner was the Food Service Supervisor I. On January 7, 1997 the "cleanliness of the kitchen on the a.m. shift" was a topic of a meeting discussion and a subject of a memorandum received by Petitioner. . . . Petitioner was issued a written warning for the lack of cleanliness in the kitchen on May 1, 1997. The written warning cited among other things; "the dirty condition of the grill" and "water standing on the floors." The warning letter further stated; "As the Food Service Supervisor I, it is your duty and responsibility to ensure that [the staff] and the inmates are performing their duties and maintaining the proper level of cleanliness in the kitchen."

There was clearly substantial evidence to support this finding. Several witnesses testified to numerous incidents involving unsanitary conditions in the kitchen, and petitioner received a written warning on 1 May 1997 expressly admonishing him for his failure to maintain clean and sanitary conditions. This assignment of error is overruled.

[3] Petitioner objects to the Commission's finding that "[a]t the hearing, the petitioner gave entirely different excuses for all of the deficiencies noted in his letter of demotion." Petitioner asserts that his answers at the pre-demotion conference did not differ materially from those he gave at the hearing, and that there is no evidence to support the Commission's contrary finding. Petitioner further asserts that there was no evidence to support the Commission's finding that "[n]o evidence was presented relative to the petitioner's 'appraisal' ".

We agree with petitioner that the responses he submitted at the hearing did not differ materially from those he gave at the pre-demotion conference. For example, at the pre-demotion conference, petitioner explained that the imbalance in the serving lines had been

caused by a staff shortage. At the hearing, petitioner elaborated on this answer, asserting that a "late count" among the inmates had caused his inmate servers to arrive late, thus resulting in the staff shortage. Petitioner gave similar testimony regarding his other responses, none of which differed materially from those he gave at the pre-demotion hearing. Thus, the Commission's finding that petitioner "gave entirely different excuses for all of the deficiencies" is unsupported by substantial evidence. The Commission further erred in finding that there was "no evidence" concerning petitioner's appraisals. Petitioner presented evidence at the hearing tending to show that he did not receive a performance appraisal in 1996.

Although we determine that the Commission erred in finding that petitioner's explanations at the conference were "entirely different" from those given at the hearing, and that "no evidence" was presented regarding an appraisal of petitioner, we conclude that these isolated findings were not material to the issue of petitioner's unsatisfactory job performance or his subsequent demotion. We therefore overrule this assignment of error.

[4] By his next assignment of error, petitioner contends that the Commission erred in finding that "[t]here was no credible evidence of intentional discrimination against the petitioner on account of his race." Petitioner asserts that he presented evidence for a *prima facie* case of racial discrimination, and that the Commission erred in determining otherwise. We disagree.

In order to make out a *prima facie* case for discrimination, the plaintiff may show that he is "(1) . . . a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group." *Dept. of Correction v. Gibson*, 308 N.C. 131, 137, 301 S.E.2d 78, 82-83 (1983). The plaintiff may also demonstrate discrimination by "showing the discharge of a black employee and the retention of a white employee under apparently similar circumstances." *Id.* at 137, 301 S.E.2d at 83.

Plaintiff asserts in the present case that he established a *prima facie* case by demonstrating that he is an African-American man and was qualified for his position as a food service supervisor. Petitioner presented no evidence, however, that he was replaced by a person who is not a member of a minority group. There was also no evidence that other, non-minority food service supervisors were retained under similar circumstances. In fact, the evidence tended to show that

Peggy Caroon, a Caucasian woman and petitioner's fellow food service supervisor, was also recommended for demotion and transfer on poor performance grounds. Incidentally, the recommendation to demote both petitioner and Ms. Caroon was made by the administrator of Pasquotank, Charles M. Creecy, Jr., who is an African-American man. As petitioner failed to make out a *prima facie* case for discrimination, the Commission did not err in its finding. We overrule this assignment of error.

[5] By his next assignment of error, petitioner argues that the Commission's conclusion that "petitioner received all of the due process to which he was entitled" is unsupported by the evidence and erroneous as a matter of law. Petitioner thus contends that the trial court erred in affirming the Commission. We do not agree.

We note again that questions of law are to be reviewed *de novo*. *See Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. " '*De novo*' review requires a court to consider a question anew, as if not considered or decided by the agency." *Id.* "[W]here the initial reviewing court should have conducted *de novo* review, this Court will directly review the State Personnel Commission's decision under a *de novo* review standard." *Id.* at 677, 443 S.E.2d at 119. Although it is unclear whether or not the trial court in the instant case reviewed *de novo* those errors asserted by petitioner to be errors of law, we employ the appropriate standard of review regardless of that utilized by the reviewing trial court. *See Souther v. New River Area Mental Health*, 142 N.C. App. 1, 4, 541 S.E.2d 750, 753, *affirmed per curiam*, 354 N.C. 209, 552 S.E.2d 162 (2001).

Section 126-35 of the North Carolina General Statutes provides in pertinent part that

> No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. In cases of such disciplinary action, the employee shall, before the action is taken, be furnished with a statement in writing setting forth in numerical order the specific acts or omissions that are the reasons for the disciplinary action and the employee's appeal rights. The employee shall be permitted 15 days from the date the statement is delivered to appeal to the head of the department.

N.C. Gen. Stat. § 126-35(a) (2001). A state employee who has a right to continued employment is entitled to a predetermination opportu-

nity to respond to the allegations against him. *See Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 349, 342 S.E.2d 914, 921-22, *cert. denied*, 318 N.C. 507, 349 S.E.2d 862 (1986).

In the instant case, petitioner does not dispute that he received two detailed written warning letters, as well as a notice of the pre-demotion conference outlining the specific grounds for the proposed disciplinary action. Petitioner attended the conference and was given the opportunity to respond to the charges of unsatisfactory job performance. Petitioner nevertheless argues that his due process rights were denied because he "was never given an action plan following any of his written warnings, as required by the Department of Correction disciplinary process and procedures." In order to claim relief based on a violation of the internal review process, however, petitioner must demonstrate "that there was a substantial chance there would have been a different result in his case if the established internal procedures had been followed." *Leiphart*, 80 N.C. App. at 353, 342 S.E.2d at 924. Petitioner sets forth no evidence tending to show that, had he been given an "action plan" following the written warnings, he would not have been demoted. Because there is no evidence that petitioner's due process rights were denied, the trial court properly affirmed the Commission's conclusion that petitioner received the due process to which he was entitled. We therefore overrule this assignment of error.

[6] By his final assignment of error, petitioner argues that the trial court erred in affirming the Commission's conclusion that "[p]etitioner's demotion was with just cause as he performed unsatisfactorily in his job duties." Petitioner asserts that this conclusion is not based on substantial evidence and is contrary to law. We disagree.

Pursuant to section 126-35(a) "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C. Gen. Stat. § 126-35(a). " 'Just cause' is a legal basis, set forth by statute, for the termination [or demotion] of a State employee, and requires the application of legal principles. Thus, its determination is a question of law." *Gainey v. N.C. Dept. of Justice*, 121 N.C. App. 253, 259 n.2, 465 S.E.2d 36, 41 n.2 (1996). "Just cause" may consist of either "unsatisfactory job performance" or "unacceptable personal conduct." N.C. Admin. Code tit. 25, r. 1J.0604(b) (June 2002). "Unsatisfactory job performance" is defined as "work-related performance that fails to satisfactorily meet job requirements as specified in the relevant job

SKINNER v. N.C. DEP'T OF CORR.

[154 N.C. App. 270 (2002)]

description, work plan, or as directed by the management of the work unit or agency." N.C. Admin. Code tit. 25, r. 1J.0614(j) (June 2002). Careless errors, poor quality of work, or failure to follow instructions or procedures may constitute unsatisfactory job performance. *See Amanini*, 114 N.C. App. at 679, 443 S.E.2d at 121. In the instant case, there was substantial evidence that petitioner did not satisfactorily meet his job requirements, which included supervising inmate workers and ensuring that the kitchen was kept in a clean and orderly fashion. Petitioner received two written warnings concerning his poor job performance, detailing petitioner's failure to follow proper procedure and failure to maintain sanitary conditions in the kitchen. Petitioner's ability to perform satisfactorily was particularly critical at Pasquotank, as noted by the Commission as follows:

> Pasquotank Correctional Institution is a high security prison housing many of North Carolina's most dangerous felons. At any given time, up to 250 inmates can be in the dining hall at once. It is therefore essential that all kitchen functions perform in an orderly fashion. Even seemingly innocuous incidents such as switching items on the menu and having an imbalanced serving line can cause a security risk.

After conducting our *de novo* review, we conclude that respondent had just cause to demote petitioner for unsatisfactory job performance.

In conclusion, we hold that the trial court did not err in affirming the decision and order of the State Personnel Commission. The order of the trial court is hereby

Affirmed.

Judges MARTIN and CAMPBELL concur.