ANGELIQUE THOMPSON, Petitioner v. NORTH CAROLINA RESPIRATORY CARE BOARD, Respondent

No. COA09-599

(Filed 2 February 2010)

**Administrative Law— petition for judicial review of final agency decision—subject matter jurisdiction—aggrieved party—standing**

The superior court erred by granting petitioner's petition for judicial review because the court did not have subject matter jurisdiction to make its determinations. Petitioner did not have standing since she was not an "aggrieved party" under N.C.G.S. § 150B-43.

THOMPSON v. N.C. RESPIRATORY CARE BD.

[202 N.C. App. 340 (2010)]

Appeal by Respondent from judgment entered 17 December 2008 by Judge Allen Baddour in Wake County Superior Court. Heard in the Court of Appeals 17 November 2009.

*Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene, Tobias S. Hampson, and Edward Eldred, for Petitioner-Appellee.*

*Poyner Spruill LLP, by William R. Shenton and Jessica M. Lewis, for Respondent-Appellant.*

BEASLEY, Judge.

North Carolina Respiratory Care Board (Board) appeals an order affirming in part and modifying in part, the Board's Final Agency Decision and Order. For the following reasons, we reverse.

Angelique Thompson (Thompson) is a licensed respiratory care practitioner in North Carolina who obtained her licence to practice in July 2004. In September 2005, she began working at Kight's Medical Corporation, a durable medical equipment company that provides home care. Some of Thompson's duties included setting up patients on various types of respiratory equipment, such as CPAPs, BiPAPS, ventilators, and apnea monitors.

On 16 July 2006, Thompson's license to practice respiratory care expired, but she did not renew it until 10 August 2006. During this time, she continued to work for Kight's Medical Corporation. In September 2006, upon receiving the application for Thompson's license renewal, the Board sent Thompson a letter stating that they had "received a complaint concerning [her] practice of Respiratory Care." The letter informed Thompson that the Board believed that there was "sufficient credible information to begin an investigation" concerning a possible violation for practicing without a license. In January 2007, Thompson attended a meeting with the Board's Investigation and Informal Settlement Committee.

Thompson signed a Consent Order with the Board acknowledging that she had practiced Respiratory Care without a license and agreed to pay civil penalties and costs related to the disciplinary action. Thereafter, Thompson did not pay the fines or costs and appealed the consent order. Thompson stated that "due to a mistake in information[,]" she had realized after the meeting that she did not provide any respiratory care during the applicable time period.

The Board referred the matter to the Office of Administrative Hearings and an Administrative Law Judge (ALJ) conducted a hearing in January 2008. The ALJ made the following conclusions of law, in pertinent part:

> Since the Reprimand and the $250.00 in civil penalties and $100.00 in costs were based on [Thompson's] mistaken agreement to the Consent Order, the Consent Order is not a sufficient basis for upholding those sanctions.
>
> [Thompson's actions] on July 17, 2006 . . . did constitute the practice of respiratory care, as defined in the Board's Rules, because it constituted "patient instruction in respiratory care, functional training in self-care and home respiratory care management, and the promotion and maintenance of respiratory care fitness, health, and quality of life. . . .
>
> Other than the apnea monitor service which [Thompson] provided on July 17, 2006, the Board has not met its burden to show by a preponderance of the evidence that [Thompson] provided respiratory care to patients while her license was lapsed from July 17, 2006 to August 10, 2006. The evidence in this case shows that the apnea monitor incident on July 17, 2006 was an isolated incident, not committed with knowledge by [Thompson] that it did or could constitute the practice of respiratory care. The evidence does not demonstrate a pattern of conduct on the part of [Thompson] warranting discipline.

The administrative law judge made a Proposal for Decision, concluding that:

> the [Board] reverse its previous decision to order [Thompson] to pay $250.00 in civil penalties and $100.00 in costs, remove any record or indication of this action from [Thompson's] record with the Board, including but not limited to the public web page reference to same, and also take all necessary measures to remove any record or indication of this action with any other entity, including but not limited to the Healthcare Integrity and Protection Data Bank and the National Databank maintained by the National Board for Respiratory Care.

The Board issued a Final Agency Decision, adopting the ALJ's Proposal for Decision. Subsequently, Thompson filed a Petition for Judicial Review of the Board's Final Agency Decision. Thompson only requested review of the Board's conclusions of law numbers 4 and 5,

which addressed Thompson's delivery, set up, and instruction on the use of an apnea monitor. Conclusions of law 4 and 5 determined that Thompson had practiced respiratory care, but that the "evidence [did] not demonstrate . . . conduct on the part of [Thompson] warranting discipline." The Board responded to Thompson's Petition for Judicial Review by requesting that the trial court dismiss Thompson's claims on the grounds that Thompson failed to show that she was a person aggrieved under N.C. Gen. Stat. § 150B-43 and argued, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, that she failed to state a claim.

Following a hearing in December 2008, the trial court issued an Order allowing Thompson's Petition for Judicial Review and affirming the Board's Final Agency Decision. However, the trial court made two modifications of the Board's conclusions of law. First, the trial court concluded that the delivery of the apnea monitor and associated instructions that Thompson gave on 17 July 2006 did not constitute the practice of respiratory care. Secondly, the trial court concluded that because the Board had not met its burden, showing that Thompson provided respiratory care to patients while her license lapsed, Thompson's conduct did not warrant discipline. From this Order, the Board appeals.

---

"When the petitioner contends the agency decision was affected by error of law . . . *de novo* review is the proper standard[.]" *Skinner v. N.C. Dep't of Corr.*, 154 N.C. App. 270, 273, 572 S.E.2d 184, 187 (2002) (internal quotations omitted). " '*De novo*' review requires a court to consider a question anew, as if not considered or decided by the agency." *Id.* at 279, 572 S.E.2d at 191 (internal quotations omitted).

The Board argues that the trial court erred by determining that Thompson had standing to file a Petition for Judicial Review. The Board contends that Thompson is not a person aggrieved because she was not required to pay any civil penalty or costs to the Board, was not reprimanded by the Board, and her "person, property, or employment" was not substantially affected. We agree.

Under N.C. Gen. Stat. § 150B-43 (2009), "[a]ny person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article[.]" In order to have standing under this statute, " '(1) the petitioner *must be an aggrieved party*; (2) there must be a

final agency decision; (3) the decision must result from a contested case; (4) the petitioner must have exhausted all administrative remedies; and (5) there must be no other adequate procedure for judicial party.' " *Steward v. Green*, 189 N.C. App. 131, 136, 657 S.E.2d 719, 722 (2008) (quoting *In re Rulemaking Petition of Wheeler*, 85 N.C. App. 150, 153, 354 S.E.2d 374, 376 (1987)) (emphasis added). A " '[p]erson aggrieved' means any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." N.C. Gen. Stat. § 150B-2(6) (2009). Our Court has defined standing as a " 'distinct and palpable injury likely to be redressed by granting the requested relief.' " *Love v. Tyson*, 119 N.C. App. 739, 744, 460 S.E.2d 204, 206 (1995) (quoting *Landfall Group v. Landfall Club, Inc.*, 117 N.C. App. 270, 273, 450 S.E.2d 513, 515 (1994)).

Thompson argues that under *Smith v. Smith*, 145 N.C. App. 434, 549 S.E.2d 912 (2001), the determination by the Board that Thompson practiced respiratory care without a license would substantially affect her person, property, or employment. In *Smith*, a domestic violence protective order against the defendant expired prior to the time of his appeal. Our Court held that because the defendant "may suffer collateral legal consequences as a result of the entry of the order[,]" that his appeal had "continued legal significance and [was] not moot." *Id.* at 436-37, 549 S.E.2d at 914. Our Court also held that:

[i]n addition to the collateral legal consequences, there are numerous non-legal collateral consequences to entry of a domestic violence protective order that render expired orders appealable. For example, a Maryland appellate court in addressing an appeal of an expired domestic violence protective order, noted that "a person applying for a job, a professional license, a government position, admission to an academic institution, or the like, may be asked about whether he or she has been the subject of a [domestic violence protective order]." *Piper v. Layman*, 726 A.2d 887, 891 (Md. Ct. Spec. App. 1999). The *Piper* court, therefore, held appeals from expired domestic violence protective orders are not moot because of the "stigma that is likely to attach to a person judicially determined to have committed [domestic] abuse." *Id.*

*Id.*

In the present case, however, Thompson's interest in her person, property, or employment have not been affected substantially by the

action of the Board. She was not required to pay any monetary penalties as the Board's Final Agency Decision reversed its previous decision, which had ordered Thompson to pay civil penalties and costs. There is also no indication that Thompson's present employment was substantially affected by the Board's decision. The Final Agency Decision not only specified that "any record or indication of the previous decision" with the Board would be removed, but that any record or indication of the previous decision with "any other entity" would be removed as well. In contrast to the *Smith* case, there would be no record of the Board's decision to substantially affect Thompson's future employment. The "non-legal collateral consequences" and "stigma" referred to in *Smith* does not apply to our present case.

Because Thompson is not an "aggrieved party" under N.C. Gen. Stat. § 150B-43, she did not have standing to petition the Superior Court for judicial review under the statute. Therefore, the Superior Court erred by granting Thompson's Petition for Judicial Review and did not have subject matter jurisdiction to make its determinations. Accordingly, we do not reach the Board's remaining arguments.

For the foregoing reasons, we reverse the Superior Court's order, granting Thompson's Petition for Judicial Review.

Reversed.

Judges WYNN and CALABRIA concur.