CALABRIA, Judge.
North Carolina State University Center for Urban Affairs and Community Services ("respondent") appeals from an order granting summary judgment in favor of JoEvelyn Heard-Leak ("petitioner"). We reverse and remand.
I. Background
Petitioner, a career State employee, was employed by respondent as an educational consultant. Respondent has a contract with the North Carolina Department of Public Instruction to review statewide testing and develop and implement new and improved testing based on the statewide curriculum. Petitioner's primary duties included developing polished and error-free items for science tests. In addition, petitioner was responsible for managing teacher item writing, reviewing contracts with teachers, and assisting with any other test development projects as directed. In order for respondent to meet client deadlines, it was necessary for petitioner to complete assigned work in a timely manner.
From November 2008, when petitioner was hired, until April 2013, petitioner's supervisor was Yevonne Brannon ("Brannon"), the Director for Research and Evaluation at the Center. In April 2013, petitioner's office was moved to a different facility because of the Center's changing needs, and Sheila Brown ("Brown"), the Program Manager, became petitioner's new direct supervisor. On 10 April 2013, Brown met with petitioner to discuss her new workplace expectations. Although Brown quickly grew concerned about petitioner's work performance and unexplained absences, she waited to address these concerns until petitioner's interim performance appraisal meeting in December 2013. Brown did not include her concerns on petitioner's interim appraisal form, but instead, decreased petitioner's work assignments to *396 20-24 items per day in order to help her meet expectations. Even though petitioner's performance target was already reduced compared to the other writers in her department, on 9 January 2014, her assignments were further decreased to 16-24 items per day.
From January to April 2014, petitioner completed 41 items, an average of less than 1 item per day. On 29 April 2014, respondent issued petitioner a Written Warning for Unsatisfactory Job Performance ("the 29 April 2014 warning letter") that included the dates on which petitioner completed tasks or failed to do so. According to the 29 April 2014 warning letter, petitioner not only failed to perform her writing requirements but also left work early, was absent without any notice or reason, and was warned that she could be dismissed if she failed to improve. Brown placed petitioner on a Performance Improvement Plan ("PIP") to address the issues outlined in this warning. The PIP required bi-weekly meetings to provide petitioner with guidance, feedback, and support. On 16 May 2014, petitioner claimed that the work expectations were unreasonable. Brannon asked petitioner to explain what she thought was reasonable to enable her to establish new goals. Despite the PIP, petitioner continued to fail to meet productivity expectations.
On 15 July 2014, respondent issued petitioner a Final Written Warning for Unsatisfactory Job Performance ("15 July 2014 warning letter"), notifying petitioner that she "ha[d] failed to conform to the performance items and [that] there ha[d] been little to no improvement in [her] work." In addition, the 15 July 2014 warning letter notified petitioner that if she failed to demonstrate "immediate, significant, and sustained improvement," it could result in disciplinary action "up to and including dismissal."
Petitioner failed to improve her performance. On 11 September 2014, respondent issued a Notice of Pre-Dismissal Conference for Unsatisfactory Job Performance ("11 September 2014 pre-dismissal letter"). Respondent stated that between 1 May and 22 August 2014, petitioner only worked 46 of 80 workdays and wrote just 63 items, instead of the expected 230. According to the 11 September 2014 pre-dismissal letter, "there continu[ed] to be no significant and sustained improvement in [petitioner's] work performance and production[;]" petitioner was "performing at levels far below positional expectations and for someone with [her] level of experience and content knowledge[;]" and "[d]espite continued coaching, mentoring, feedback, multiple disciplinary actions and an unsatisfactory performance review for the 2013-2014 cycle, [petitioner] continued to fail to increase [her] productivity and complete the minimal item writing and reviewing expectations of a content specialist."
At the pre-dismissal conference held on 15 September 2014, petitioner was asked whether she had complied with expectations and she responded, "no." When petitioner was asked if she completed 5 items on any day, she responded, "no." Although petitioner was given the opportunity to present evidence rebutting the recommendation for dismissal for unsatisfactory work performance, she failed to present any evidence and failed to indicate that her performance would improve in the future.
On 17 September 2014, petitioner received a Notice of Dismissal for Unsatisfactory Job Performance ("17 September 2014 dismissal letter"), which detailed the issues and actions that led to the termination of her employment with respondent. The 17 September 2014 dismissal letter specifically referenced the two warning letters, the bi-weekly progress meetings, the 11 September 2014 pre-dismissal letter, and the pre-dismissal conference.
On 19 November 2014, petitioner filed a grievance pursuant to the University of North Carolina System SPA Employee Grievance Policy, alleging that her dismissal lacked just cause and was due to discrimination. On 30 January 2015, petitioner was informed of the final decision upholding her dismissal because respondent "met both the procedural and substantive requirements to dismiss [petitioner] for unsatisfactory job performance" and petitioner did not meet her burden of showing that her dismissal was based on discrimination. The final decision included everything that was in her notice of dismissal, as well as performance and attendance *397 warnings from April 2013 and petitioner's performance appraisal from 12 December 2013.
Since petitioner believed she was dismissed without just cause, she filed a Petition for a Contested Case Hearing on 16 February 2015. At the hearing, respondent presented evidence through Brown and Brannon. Brown testified that in making the decision to discipline petitioner, they considered all of the written warnings issued, as well as documentation showing "that we had concerns with [petitioner's] productivity for several months and actually about a year prior." Both Brannon and Brown testified that since they viewed the interim meeting as an opportunity to discuss methods to help petitioner improve, they did not want to document concerns that they felt could be resolved through a discussion.
Because of scheduling conflicts, the hearing was recessed and rescheduled. Petitioner filed a Motion for Summary Judgment on 7 August 2015, asserting that she was entitled to judgment as a matter of law since respondent failed to comply with N.C. Gen. Stat. § 126-35 because it "failed to provide petitioner with a statement ... describing in numerical order all specific acts or omissions that were the reasons for her dismissal" based on Brown's 16 June 2015 testimony. The ALJ concluded that because "considerable information concerning petitioner's work history, which was beyond the notice given petitioner as to the reasons for her termination, was considered by respondent," respondent "exceeded authority, acted erroneously, failed to use proper procedure and failed to act as required by law" in dismissing petitioner. As a result, the ALJ granted petitioner's motion for summary judgment and ordered retroactive reinstatement, back pay, and attorney's fees. The ALJ made no written findings of fact or additional conclusions of law. Respondent appeals.
II. Notice of Reasons for Dismissal
Respondent argues that the ALJ erred by granting petitioner's motion for summary judgment since respondent met the procedural requirements of N.C. Gen. Stat. § 126-35 prior to dismissing petitioner. We agree.
A. Standard of Review
Judicial review of an agency's summary judgment ruling is governed by N.C. Gen. Stat. § 150B-51(d) (2015):
In reviewing a final decision allowing ... summary judgment, the court may enter any order allowed by G.S. 1A-1, Rule 12(c) or Rule 56. If the order of the court does not fully adjudicate the case, the court shall remand the case to the administrative law judge for such further proceedings as are just.
We apply the same review standard established by Rule 56 of the North Carolina Rules of Civil Procedure when reviewing an agency's summary judgment ruling, and our scope of review is de novo . See Krueger v. N.C. Criminal Justice Educ. & Training Standards Comm'n , 198 N.C.App. 569, 576, 680 S.E.2d 216, 221 (2009).
Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "[W]hen considering a summary judgment motion, ' "all inferences of fact ... must be drawn against the movant and in favor of the party opposing the motion." ' " Craig ex rel. Craig v. NewHanover Cty. Bd. of Educ. , 363 N.C. 334, 337, 678 S.E.2d 351, 353-54 (2009) (citations and additional quotation marks omitted). Whether notice is adequate is a question of law; however, "[t]he legal question of whether a dismissal letter is sufficiently particular has always been fact-specific." Barron v. Eastpointe Human Servs. LME , --- N.C.App. ----, ----, 786 S.E.2d 304, 314 (2016) (internal citation and quotation marks omitted).
B. Analysis
N.C. Gen. Stat. § 126-35(a) provides in pertinent part that, before a career State employee may be terminated for disciplinary reasons, "the employee shall ... be furnished with a statement in writing setting forth the specific acts or omissions that are the reasons for the [termination]." In interpreting *398 the notice requirement of this statute, this Court has explained that the purpose of N.C. Gen. Stat. § 126-35"is to provide the employee with a written statement of the reasons for his discharge so that the employee may effectively appeal his discharge." Leiphart v. N.C. Sch. of the Arts , 80 N.C.App. 339, 350-51, 342 S.E.2d 914, 922 (1986) ; see also Emp't Sec. Comm'n v. Wells , 50 N.C.App. 389, 393, 274 S.E.2d 256, 259 (1981) ("An employee wishing to appeal his dismissal must be able to respond to agency charges and be able to prepare an effective representation."). Accordingly, "[t]he written notice must be stated 'with sufficient particularity so that the discharged employee will know precisely what acts or omissions were the basis of his [or her] discharge.' " Barron , --- N.C.App. at ----, 786 S.E.2d at 314 (quoting Wells , 50 N.C.App. at 393, 274 S.E.2d at 259 ). Nonetheless, although an employee is entitled to notice of the acts and omissions underlying the disciplinary action, he or she is not entitled to "notice of every item of evidence pertaining to [the employee's] acts and omissions." Blackburn v. N.C. Dep't of Pub. Safety , --- N.C.App. ----, ----, 784 S.E.2d 509, 519, disc. review denied , --- N.C. ----, 786 S.E.2d 915 (2016).
In Nix v. Dep't of Admin. , 106 N.C.App. 664, 417 S.E.2d 823 (1992), the employee's dismissal letter stated that he "was being terminated because he 'had not been performing at the level expected by [his] position classification,' and because there had been no 'marked improvement' since the oral and the written warnings of earlier that year." Id. at 667, 417 S.E.2d at 826. The referenced warning letter stated that the employee "had been 'unable to satisfactorily fulfill the overall responsibilities required in [his] current position.' " Id. Accordingly, this Court held that the dismissal letter provided a "sufficiently specific statement of reasons under Leiphart , particularly since petitioner was already on notice due to the previous two warnings that he was not performing at the expected level." Id.
In Skinner v. N.C. Dep't of Corr. , 154 N.C.App. 270, 572 S.E.2d 184 (2002), this Court affirmed an employee's demotion based on unsatisfactory job performance where "he received two detailed written warning letters, as well as a notice of the pre-demotion conference outlining the specific grounds for the proposed disciplinary action." Id. at 280, 572 S.E.2d at 191. In reaching this decision, the Court noted that "[p]etitioner received two written warnings concerning his poor job performance, detailing petitioner's failure to follow proper procedure and failure to maintain sanitary conditions in the kitchen." Id. at 281, 572 S.E.2d at 192.
In the instant case, respondent's 17 September 2014 dismissal letter described in sufficient detail petitioner's acts and omissions underlying the reasons for her dismissal. According to the 17 September 2014 dismissal letter, petitioner's termination was due to unsatisfactory job performance on the basis that, inter alia , she had been provided numerous written warnings, yet "had not conformed to the performance items/expectations" and had shown "little to no improvement in [her] work or output." Respondent explained that petitioner's productivity and work output was considered and tracked beginning in January 2014, when she was informed that respondent expected 16-24 written items per day. According to the 29 April 2014 warning letter, petitioner had "demonstrated a consistent pattern of failing to engage in a productive and efficient manner, [and] failed to follow directives and complete work assignments in a timely and accurate manner[,]" as evidenced by specific instances of conduct on 11, 14, 15, 18, 22, 23, 24, 25, 28, and 29 April 2014. Although petitioner "ha[d] been given specific daily item targets, and provided specific timelines/targets to complete minimal item work, as well as again being provided specific item writing guidelines that [she] ha[d] used since [she was] first employed [t]here[,]" she still "failed to complete the minimal item writing and reviewing expectations of a content specialist."
According to the 17 September 2014 dismissal letter, petitioner received the 15 July 2014 warning letter because she had not "demonstrat[ed] the improvement ... needed to remain a contributor to the department." The 15 July 2014 warning letter *399 detailed specific, ongoing problems with petitioner's work performance:
As [Brown] advised at our previous meetings, your performance has not improved and continues to be unsatisfactory. The quality of your work is not at the level expected for someone with your level of experience and content knowledge. Many items do not follow our set item guidelines and have numerous grammatical and formatting errors. Your quantity of work is at a minimal level and insufficient for us to meet our deadlines for our client. Your production is lower than any other content specialist on our team, including those who are not, full-time, weekly employees. You continue to reject high numbers of items from our database, while failing to write items as requested.
You have been provided with a very specific set of goals to improve your work production and have failed to meet those benchmarks on any day since May 1, 2014. Since our meeting on June 2, 2014, you have completed only 125 item reviews over 7 days (average of 17.85 daily). You failed to create and input items into our TDS as requested. You have continued to fail to increase your productivity and complete the minimal item writing and reviewing expectations of a content specialist.
Prior to the 17 September 2014 dismissal letter, petitioner received a pre-dismissal letter on 11 September 2014 stating that she had not shown any "significant and sustained improvement in work performance and production" and was "performing at levels far below positional expectations and for someone with [her] level of experience and content knowledge." As of that date, "[d]espite continued coaching, mentoring, feedback, multiple disciplinary actions and an unsatisfactory performance review for the 2013-2014 cycle," petitioner had failed "to increase [her] productivity and complete the minimal item writing and reviewing expectations of a content specialist." Finally, respondent's 17 September 2014 dismissal letter stated that at the pre-dismissal conference, petitioner "did not present information that would justify retaining [her] as an employee" and admitted that she had failed to comply with writing and performance expectations.
Considering the notice this Court held adequate in Nix and Skinner , we conclude the trial court erred by prematurely granting summary judgment on the "fact-specific" legal question of whether petitioner was provided sufficient notice prior to her termination. The 17 September 2014 dismissal letter described petitioner's acts and omissions with sufficient particularity to notify her "precisely what acts or omissions were the basis of [her] discharge." Wells , 50 N.C.App. at 393, 274 S.E.2d at 259. The evidence at this stage of the proceedings, taken in the light most favorable to respondent, indicates that petitioner: (1) had notice of her unsatisfactory performance review for the 2013-2014 cycle; (2) was put on a PIP that specifically outlined what she needed to do to improve her job performance and avoid disciplinary action; (3) participated in ongoing progress meetings where she received feedback, guidance, and counseling; (4) was given two detailed written warnings describing her specific failures to meet work expectations; (5) received a pre-disciplinary conference letter informing her that "dismissal [wa]s being considered due to [he]r ongoing unsatisfactory job performance"; and (6) participated in the pre-disciplinary conference that was held prior to her dismissal. Based on this evidence, petitioner was not deprived of her ability to "prepare an effective representation" or "effectively appeal h[er] discharge." See Leiphart , 80 N.C.App. at 350-51, 342 S.E.2d at 922-23. Petitioner received repeated notice that she was not performing at the expected level. More importantly, she received more specific notice than the employees in Nix and Skinner .
As a secondary matter, regarding the ALJ's reason, in part, for granting summary judgment on the basis that "[c]onsiderable information concerning [p]etitioner's work history with [r]espondent ... was considered by [r]espondent in making the decision to terminate [p]etitioner," we emphasize that our Supreme Court recently listed an employee's "work history" as one of multiple factors of consideration deemed an "appropriate *400 and necessary component of a decision to impose discipline [for just cause] upon a career State employee ...." See Wetherington v. N.C. Dep't of Pub. Safety , 368 N.C. 583, 592, 780 S.E.2d 543, 546 (2015). Furthermore, although a career State employee is entitled to adequate notice of the rationale underlying a disciplinary action, he or she is not entitled to notice of every single piece of evidence supporting the decision. See Blackburn , --- N.C.App. at ----, 784 S.E.2d at 519 (rejecting the petitioner-employee's argument "that he is entitled to notice, not only of the acts and omissions that were the basis of his termination, but also to notice of every item of evidence pertaining to these acts and omissions" because no authority supported "his vastly expanded view of 'notice' "). Therefore, respondent acted well within its authority to consider petitioner's work history when determining whether just cause existed to terminate her employment.
III. Conclusion
The trial court erred by granting summary judgment as a matter of law on the basis that respondent failed to comply with the procedural requirements of N.C. Gen. Stat. § 126-35(a). Additionally, our careful review of the record, transcripts, exhibits, and briefs in this case reveals no other justification for this Court to affirm the ALJ's summary judgment order. See Shore v. Brown , 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989) ("If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal."). Therefore, the ALJ's order granting petitioner's motion for summary judgment must be reversed. In light of our disposition, we need not address respondent's remaining arguments on appeal.
Because our decision addresses only whether summary judgment was proper based on a threshold issue of procedure and "does not fully adjudicate the case, [we] shall remand the case to the administrative law judge," pursuant to N.C. Gen. Stat. § 150B-51(d), with instructions to recommence proceedings in order for respondent to complete its case-in-chief regarding petitioner's dismissal for just cause.
REVERSED AND REMANDED.
Report per Rule 30(e).
Chief Judge McGEE and Judge STROUD concur.